CITY OF SPRINGFIELD DEPARTMENT OF PUBLIC AFFAIRS, Plaintiff-Appellant, *v.* THE CIVIL SERVICE COMMISSION FOR THE CITY OF SPRINGFIELD *et al.*, Defendants-Appellees.

Fourth District   No. 4—82—0455

Opinion filed February 23, 1983.—Rehearing denied March 21, 1983.

Frederic Benson, Corporation Counsel, of Springfield, for appellant.

Livingstone, Mueller, Gunning & Davlin, of Springfield, for appellee Civil Service Commission.

Edward G. Coleman, of Springfield, for appellee Adam Sockel.

JUSTICE GREEN delivered the opinion of the court:

Plaintiff, City of Springfield Department of Public Affairs, appeals a judgment of the circuit court of Sangamon County entered July 9, 1982. That court affirmed a decision of defendant, the Civil Service Commission for the City of Springfield, Illinois (Commission), entered June 25, 1982, which denied plaintiff's complaint for the discharge of defendant, Adam Sockel, from his position as a city police officer. The charge before the Commission alleged that defendant Sockel "violat[ed] Police Department Rule 1.07 by refusing a lawful order of [a field commander] to submit to a breathalyzer test ***." We affirm.

The evidence before the Commission showed that: (1) Sockel was a 17-year veteran of the Springfield Police Department; (2) on March 20, 1981, Sockel worked a shift ending at 3:15 p.m.; (3) Sockel then drove home in an automobile assigned to him for use both on and off

duty; (4) sometime after 9 p.m. Sockel proceeded in the same vehicle toward a motel where he had a second job as a security guard; (5) en route to the motel, the vehicle Sockel was driving was involved in a collision; (6) although the collision occurred outside of the limits of the City of Springfield, both a deputy sheriff and a city police officer drove to the scene; (7) neither of the law enforcement officers charged defendant with driving under the influence of alcohol; (8) a Springfield police field commander also visited the scene and later directed Sockel to report to him at the police station; and (9) there, the field commander directed Sockel to submit to a breathalyzer, but Sockel refused to do so.

The following rules of the Springfield police department are those Socket was alleged to have violated:

"Section 1.07: Insubordination

A. Employees shall promptly obey any lawful order, oral or written, of a superior officer or supervisor. This will include orders relayed from a superior officer by an officer of the same or lesser rank. (The term 'lawful order' shall be construed as any order in keeping with the performance of any duty prescribed by law or by these rules and regulations, General Orders or established policy and procedure, or one consistent with the preservation of good order, efficiency and proper discipline, which is not in conflict with these rules and regulations.)

B. Insubordination shall include, but not be necessarily limited to, any willful failure to obey or deliberate refusal to obey a lawful order given by a superior, ***.

* * *

Section 1.15: Use of Polygraph, Medical
Examinations, Photographs, and Lineups
* * *

B. Medical Examinations, Photographs and Lineups. Upon the order of the Chief or the Chief's designee, officers shall submit to any medical, psychiatric or psychological, ballistics, chemical, breathalyzer, or other tests, photographs or lineups. All procedures carried out under this subsection shall be specifically directed and narrowly related to a particular internal investigation being conducted by the Department of the officer's ability to perform his/her duties. The term 'medical examination' as used in this Section shall include examinations to determine officers' physical and mental condition and processes."

Sockel does not dispute that he refused to take a breathalyzer test. He maintains the command that he do so was not lawful under

the circumstances because: (1) he had not been given the advice contained in section 10—1—18 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 10—1—18) which is required before an examination of a city police officer may be conducted; (2) the command for him to submit to the test did not comply with the requirements of section 11—501.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.1); and (3) the field commander stated that the test was necessary because of a possible violation of Springfield Police Department Regulation 1.59 which was not applicable.

■ Section 10—1—18 of the Illinois Municipal Code states:

"Before any officer or employee in the classified service of any municipality may be *interrogated* or *examined* by or before any disciplinary board, or *department agent* or investigator, the results of which hearing, interrogation or examination *may* be the basis for filing charges seeking his removal or discharge, he must be advised in writing as to what specific improper or illegal act he is alleged to have committed; he must be advised in writing that his admissions made in the course of the hearing, interrogation or examination may be used as the basis for charges seeking his removal or discharge; and he must be advised in writing that he has the right to counsel of his own choosing present to advise him at any hearing, interrogation or examination; and a complete record of any hearing, interrogation or examination shall be made and a complete transcript thereof made available to such officer or employee without charge and without delay." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 24, par. 10—1—18.)

Plaintiff agrees that no compliance with section 10—1—18 took place before the field commander ordered Sockel to submit to the breathalyzer test. We hold that the failure made the order unlawful and excused Sockel's failure to comply.

■ We conclude that the field commander was a "department agent" and Sockel's submission to a breathalyzer test at the field commander's direction would have constituted being "examined" by the field commander all within the meaning of section 10—1—18. The test would not seem to constitute an "interrogation," a word which is generally used in connection with obtaining responses of a testimonial nature from the person being interrogated. (See "interrogate," Webster's Third New International Dictionary 1182 (1976).) The word "examination" has a broader meaning. The most relevant definitions of "examine" and "examination" are:

"Examine *** 1: to test by an appropriate method: INVESTI-

GATE: as *** b: to inspect or test for evidence of disease or abnormality (the doctor *examined* the young men and found them in perfect health) *** 3: to interrogate closely (as in a judicial proceeding): try or test by question (*examining* witnesses in court) (*examined* the students in French) ([to *examine*] a bankrupt regarding the state of his property) ***."

Examination *** 1: the act or process of examining or state of being examined: SEARCH, INVESTIGATION, SCRUTINY." (Webster's Third New International Dictionary 790 (1976).)

Thus, although the words "interrogation" and "examination" are sometimes used with almost the same meaning, "examination" is the broader term and would include an inspection of an individual's body fluids to determine the alcohol content of the individual's blood. Moreover, as both words are used, the use of the word "examined" must not have been intended to be superfluous but rather to include procedures other than those constituting "interrogation." *Mid-South Chemical Corp. v. Carpentier* (1958), 14 Ill. 2d 514, 153 N.E.2d 72.

In *Danison v. Paley* (1976), 41 Ill. App. 3d 1033, 355 N.E.2d 230, this court held that compliance with section 10—1—18 was required in all cases where an investigation had been started, and the information gained by the interrogation or examination *might* (as distinguished from *would*) result in the employee's discharge. The investigation had proceeded much farther in *Danison* than here, as there, a letter had been sent to the police officer requesting his appearance on a particular day for questioning. Here, the proposed examination took place on the day of the occurrence, but Sockel, although off duty (but still subject to call at all times) was directed to come back to the police station. Clearly, a determination that he was intoxicated while driving the police vehicle might have resulted in his discharge.

We are concerned with two aspects of our interpretation of section 10—1—18. The section indicates that the officer or employee has a right to counsel at any examination. Where, as here, the examination is of such nature that the substance to be examined will be changed by the lapse of time, a condition that the counsel appear within a reasonable time must be implied. By analogy, the provisions of section 11—501.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.1), which concerns administration of a breathalyzer test under the implied consent provisions of the Illinois Vehicle Code, give the subject to be tested a right to consult counsel within 90 minutes of being requested to submit to the test. Absent such an implied condition, an attorney for an officer or employee could pre-

vent an effective breathalyzer test by delaying his appearance.

Section 10—1—18 also requires the admonition given to the officer or employee to be in writing. This provision would impose an added difficulty to timely use of a breathalyzer test, but there is no inherent reason why the person requiring the examination cannot write out the admonition and hand the document to the person to be examined.

Although our ruling in regard to defendant Sockel's first contention is sufficient to dispose of the appeal, because of our reference to section 11—501.1 of the Illinois Vehicle Code and its analogy to the rights of counsel under section 10—1—18 of the Municipal Code, we deem further discussion of it appropriate. Section 11—501.1 pertains to the administration of breathalyzer tests requested by police officers of persons who have impliedly consented to come under the provisions of that section by their use of the State's highways. Had those persons not given their implied consent by using the highways, no proper request for the test could be made by the officers. The direction given to Sockel was made pursuant to Springfield Police Department Regulations. When Sockel became a police officer he agreed to obey those regulations unless they were unlawful. The police department could not require ordinary citizens to take breathalyzer tests except under section 11—501.1 of the Illinois Vehicle Code, but, if section 10—1—18 of the Municipal Code had been followed, the order to Sockel would have been valid.

The cases of *Myers v. Cook County Police & Corrections Merit Board* (1978), 67 Ill. App. 3d 223, 384 N.E.2d 805, and *Coursey v. Board of Fire & Police Commissioners* (1967), 90 Ill. App. 2d 31, 234 N.E.2d 339, indicate that absent statutory prohibition, law enforcement agencies have inherent power to provide by regulation for requirements that officers submit to breathalyzer tests. In those cases similar regulations requiring officers to submit to polygraph tests were upheld without a showing of statutory authority. Application of section 10—1—18 of the Municipal Code was not in issue in those cases. The polygraph test is at least as intrusive as a breathalyzer test. No compliance with section 11—501.1 of the Illinois Vehicle Code was required.

Because of the failure of the Springfield Police Department to follow 10—1—18 of the Municipal Code, we affirm.

Affirmed.

MILLS and TRAPP, JJ., concur.