FRANK CORGIAT, Petitioner-Appellee, v. POLICE BOARD OF THE CITY OF CHICAGO *et al.*, Respondents-Appellants.

First District (5th Division)   No. 1—90—3587

Opinion filed July 10, 1992.

2

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Nina Puglia, Assistant Corporation Counsel, of counsel), for appellants.

Joseph V. Roddy, of Chicago, for appellee.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

The Chicago police board and the superintendent of police appeal the circuit court's reversal of the police board's decision to discharge Chicago police officer Frank Corgiat. We affirm the judgment of the circuit court.

On May 24, 1989, the superintendent of police filed charges with the Chicago police board, stemming from Officer Corgiat's conduct on July 30 and 31, 1987, when the officer refused two direct orders to report to the medical services station for a urinalysis, and subsequently failed to report to work without securing authorized leave. Prior to this alleged misconduct, Corgiat had been under investigation by the internal affairs division of the police department for suspected distribution of cocaine. On July 30, Corgiat had requested emergency leave so that he could be admitted into the alcohol unit of a hospital. When Lieutenant Brogue told him (over the phone) that his leave was denied and that he was supposed to report for the urinalysis testing, the phone connection was broken abruptly, and Corgiat later testified that he never received these orders. Following this phone call and several unsuccessful attempts to reestablish the connection, Lieutenant Sandberg went to Corgiat's home to speak with him. There he not only notified Corgiat of the pending drug charges, but also informed the officer that he was being relieved of his police powers. At this time, Sandberg again ordered Corgiat to report to the medical services section for a urinalysis. Corgiat refused, stating that he was going to a hospital instead. That Corgiat entered the alcoholism unit of Lutheran General Hospital later in the day on July 30 was corroborated by the testimony of two alcoholism counselors, one from the Chicago police board itself. Nevertheless, because Corgiat did not show up for work on July 30 or July 31, his absences were reported as unexcused.

The aforementioned events led to the charges of May 24, 1989, and ultimately to Corgiat's discharge from the police force for violation of the following departmental rules:

> "Rule 2: Any action or conduct which impedes the Department's efforts to achieve its policy and goals or brings discredit upon the Department.
>
> * * *
>
> Rule 6: Disobedience of an order or directive, whether written or oral.

* * *

Rule 28: Being absent from duty without proper authorization."

Although Corgiat requested that the charges before the police board be dismissed because he had never been given his administrative warnings before being ordered to report to the medical services unit for urinalysis testing, such request was denied. On November 19, 1990, this matter was reviewed by the trial court, which ruled that because administrative warnings were not given, Corgiat's motion to dismiss should have been allowed. It therefore reversed the decision of the police board in its entirety.

■ On appeal, the police board maintains that in making its determination that Corgiat was entitled to be advised of his administrative rights at the time of the order to report to the medical services unit, the circuit court incorrectly relied on *City of Springfield Department of Public Affairs v. Civil Service Comm'n* (1983), 112 Ill. App. 3d 856, 446 N.E.2d 284, which construed section 10—1—18 of the Illinois Municipal Code (Ill. Rev. Stat. 1987, ch. 24, par. 10—1—18).[1] Section 10—1—18 of the Illinois Municipal Code states:

> "Before any officer or employee in the classified service of any municipality may be interrogated or examined by or before any disciplinary board, or department agent or investigator, the results of which hearing, interrogation or examination may be the basis for filing charges seeking his removal or discharge, he must be advised in writing as to what specific improper or illegal act he is alleged to have committed; he must be advised in writing that his admissions made in the course of the hearing, interrogation or examination may be used as the basis for charges seeking his removal or discharge; and he must be advised in writing that he has the right to counsel of his own choosing present to advise him at any hearing, interrogation or examination; and a complete record of any hearing, interrogation or examination shall be made and a complete transcript thereof made available to such officer or employee without charge and without delay." Ill. Rev. Stat. 1987, ch. 24, par. 10—1—18.

---

[1] Although section 10—1—18.1 (Ill. Rev. Stat. 1987, ch. 24, par. 10—1—18.1) and not section 10—1—18 is involved in the instant action, the language of these two sections is identical. While the former section applies to police discipline in municipalities with populations over 500,000, the latter governs cities with populations under 500,000.

The *City of Springfield* court found that based on the abovementioned statutory authority, an accused police officer cannot be disciplined for failure to submit to a breathalyzer test when the order given him to submit was not preceded by administrative warnings. This court reasoned that although the words "interrogation" and "examination" are sometimes used with almost the same meaning, "examination" is a broader term and would include an inspection of an individual's body fluids to determine the alcohol content of the individual's blood. (*City of Springfield*, 112 Ill. App. 3d 856, 446 N.E.2d 284.) Relying on this decision, the trial court in the case at bar found that administrative warnings must be provided to a police officer ordered to undergo urinalysis because he was suspected of dealing cocaine.

In arguing the inapplicability of *City of Springfield* to the instant action, the police board initially contends that the Illinois Municipal Code, relied upon by the *City of Springfield* court, does not apply to the City of Chicago. In support of this argument, the police board cites the broad home rule powers granted by the Illinois Constitution of 1970 (Ill. Const. 1970, art. VII, §6(a)) and the Municipal Code of the City of Chicago, which does state that its general purpose is to "substitute a public employment system superseding the Civil Service System now operating within the City of Chicago pursuant to the law of the state of Illinois." (Chicago Municipal Code §25.1—1 (1976).) What the police board neglects to note is that even if the city's Municipal Code controls, the language of this code tracks the language of the Illinois Municipal Code and provides identical rights to the police officer at issue.[2] Thus

---

[2]Section 11—3 of the 1976 Chicago Municipal Code, which has been updated to section 2—84—030 of the 1990 Chicago Municipal Code, provides as follows:

"Before any such officer or employee may be interrogated or examined by or before the police board, or any member or hearing officer designated by it, or departmental agent or investigator, the results of which hearing, interrogation or examination may be the basis for filing charges seeking his removal or discharge, he must be advised in writing as to what specific improper or illegal act he is alleged to have committed; he must be advised in writing that his admissions made in the course of the hearing, interrogation or examination may be used as the basis for charges seeking his removal or discharge; and he must be advised in writing that he has the right to counsel of his own choosing present to advise him at any hearing, interrogation or examination; and a complete record of any hearing, interrogation or examination shall be made and a complete transcript thereof made available to such officer or employee without charge and without delay";

and it is virtually identical to section 10—1—18.1 of the Illinois Municipal Code (Ill. Rev. Stat. 1987, ch. 24, par. 10—1—18.1) as quoted on page 4.

the outcome of the instant action would be the same under either of the pertinent statutory authorities.

The police board also argues that even if *City of Springfield* does apply, this appellate court decision's interpretation of the word "examination" is too broad, and that the statute at issue should not be read to encompass physical examinations such as a urinalysis. As support for this contention, the police board urges this court to rely on *Washington v. Civil Service Comm'n* (1981), 98 Ill. App. 3d 49, 423 N.E.2d 1136, which found that administrative rights were not required prior to a polygraph examination, as such examination was far different from the type of adversarial examination which was intended by the statute. While *Washington* does support a narrower reading of statutory administrative rights, it is not applicable to the case at bar. In *Washington*, unlike the instant action, the totality of evidence considered supported the opinion expressed by the trial judge. In the instant action, there is no other evidence to be considered other than the urinalysis itself. Furthermore, *Washington* involved a lesser deprivation of rights than the case at bar, as the officer at risk was suspended rather than discharged. (Furthermore, the appellate court reduced the suspension itself from 29 to 5 days.) For these reasons, we decline to apply the *Washington* analysis to the case at bar.

The police board further maintains that under the Illinois Public Labor Relations Act (Ill. Rev. Stat. 1989, ch. 48, par. 1615), the collective bargaining agreement of the Fraternal Order of Police would regulate the conduct of disciplinary investigations. This act does provide that in case of conflict between the provisions of the Act and any law or ordinance or any collective bargaining agreement, the collective bargaining agreement shall control. However, the collective bargaining agreement relied upon by the police board, which is entitled "Sworn Member Bill of Rights," does not conflict with any other statute or ordinance in its provisions for rights of police officers under investigation. In fact this agreement provides in pertinent part as follows: "If the allegation under investigation indicates a recommendation for separation is probable against the officer, the officer will be given the statutory administrative proceedings rights ***." (Chicago Municipal Code §2—84—330 (1990).) We interpret this reference to "statutory administrative rights" as encompassing the panoply of rights provided by either section 2—84—30 of the Municipal Code of Chicago or section 10—1—18.1 of the Illinois Municipal Code (Ill. Rev. Stat. 1987, ch. 24, par. 10—1—18.1), both of which provide the right to counsel, which Corgiat never received.

The police board finally contends that the order of the trial court should be reversed as it never addressed the police board's finding

that Corgiat failed to report for duty without permission from his commanding officer. We disagree. Although the trial court made no independent findings regarding Corgiat's failure to report for work, it reversed his dismissal "in its entirety." Implicit in this order is the finding that the individual charges against the police officer were against the manifest weight of the evidence. Additionally, our review of the record supports this determination. Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

LORENZ and MURRAY, JJ., concur.