JOHN WASHINGTON, Plaintiff-Appellant, *v.* CIVIL SERVICE COMMIS-
SION OF THE CITY OF EVANSTON *et al.*, Defendants-Appellees.

First District (4th Division)   No. 83—172

Opinion filed December 22, 1983.—Rehearing denied January 25, 1984.

Lawrence Jay Weiner, Lee M. Weisz and Fredric Bryan Lesser, all of
Weiner, Neuman & Spak, of Chicago, for appellant.

Jack M. Siegel, of Chicago, for appellees.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, John Washington, was a police officer for the city of Evanston when this action was instituted. He appeals from the decision of the circuit court which set aside an Evanston Civil Service Commission (the Commission) decision suspending him for 120 days following a hearing on a three-count complaint. The judgment of the circuit court directed his discharge from the police force.

The issues on appeal are (1) whether the circuit court could properly entertain the cross-complaint filed by the city more than 35 days after the issuance of the Commission's decision; (2) whether the admission of the polygraph evidence was improper; (3) whether the police chief could properly order plaintiff to submit to blood and saliva tests; and (4) whether the circuit court acted improperly in reversing the Commission's findings and imposing a harsher sanction.

We reverse.

On February 6, 1981, three days of hearings began before the Commission hearing officer on charges brought against plaintiff by the chief of police of the Evanston Police Department. The charges consisted of three counts and sought discharge of plaintiff from his position as a police officer for the city.

Count I of the complaint alleged that plaintiff, through the use of threats and intimidation, coerced a female to engage in sexual intercourse with him following her arrest for a traffic violation. Count II alleged that plaintiff engaged a female motorist in a sexually suggestive and improper conversation following a routine traffic stop. Count III alleged that plaintiff disobeyed an official order to submit to blood and saliva tests in connection with the investigation of the allegations in count I. Following is a summary of the evidence adduced at the hearing.

Regarding count I, the complaining witness testified that late on the night of August 25, 1980, she was involved in an automobile accident in the city of Evanston. After investigating the accident, plaintiff arrested her and took her to the police station. When she was released later that evening, plaintiff drove her back to her car. A conversation ensued in which plaintiff threatened and/or made promises to her regarding the outcome of the charges facing her. As a result of the coercion, she had sexual intercourse with him in the back seat of her car, in an alley. Plaintiff was on duty and in uniform at the time of the occurrence.

Shortly after the occurrence, the complainant reported to the

Evanston Police Department that she had been raped by plaintiff. She was taken to a hospital where she was examined by a physician. The physician testified that he examined the complainant about 4 a.m. on August 26, 1980, and at that time she stated to him that she had been assaulted. A specimen was taken from the vaginal area to determine the presence of human seminal material. A blood sample was also taken from the complainant.

A forensic expert testified that he examined the vaginal specimen taken from the complainant and it showed the presence of seminal material. Seminal material was also found in a pair of panties belonging to the complainant. The blood sample taken from the complainant was tested to determine blood group type. The expert stated that a saliva sample from the complainant and a blood and saliva sample from plaintiff were needed in order to make a comparison with the blood group test done on the seminal material. He emphasized that the blood and saliva samples were needed to perform certain tests which would show that plaintiff could either be included or excluded as having had sexual intercourse with the complainant. However, the tests were never concluded because no blood or saliva was ever received from plaintiff, and no saliva was received from the complainant.

It was disclosed that the complainant had been given a polygraph test in connection with her charges against plaintiff. The results of that test suggested that her allegation of being raped was untrue. The results of a second polygraph test suggested that the complainant was telling the truth when she recanted her earlier claim of being raped and claimed instead that she submitted to sexual intercourse with plaintiff under duress.

It was established that the complainant had previously engaged in prostitution, had been arrested for theft, and was a former narcotics addict.

Regarding the charges contained in count II, the second complainant, a 23-year-old woman, testified as follows: she was stopped by plaintiff while driving alone on Sheridan Road in Evanston, on or about August 15, 1980, at 5:30 a.m. After plaintiff stopped her, she got out of her car, as did he. She told him that she did not have her driver's license because she was "driving on a ticket." She showed plaintiff the ticket in lieu of her drivers's license.

Plaintiff engaged her in conversation and asked a number of personal questions. He also made a remark about getting into the back seat of the complainant's car. He inquired about her marital status and told her that because he was a nice guy he would not give her a

ticket. He also asked her for a date. The complainant became fearful when plaintiff asked her to take a walk on the beach with him. She told him that she had to go home. She then got into her car and drove away. Plaintiff did not issue a traffic ticket to her, and she denied speeding prior to being stopped. The incident was not reported to the Evanston police until August 26, 1980, when complainant was at the police station to obtain a vehicle sticker. At that time, she gave a statement to an officer, describing the incident and physical characteristics of the officer who had stopped her on August 15. She stated at the hearing that she recognized plaintiff when he stopped her because he had been a security guard at her high school. She picked plaintiff's photograph out of a group of approximately 40 photographs of Evanston police officers.

The complainant later took a polygraph test which suggested that her allegations against plaintiff were true. The polygraph examiner testified that in his opinion complainant was truthful in her answers regarding the sexually suggestive comments made by plaintiff.

There was also testimony by the polygraph examiner who had administered a polygraph test to plaintiff. The examiner stated that in his opinion plaintiff was not truthful in his denial of the allegations in count II.

Plaintiff testified in his own behalf. He denied stopping the complainant on the day in question or at any other time, as alleged in count II.

On May 8, 1981, the hearing officer issued his decision. He noted that the issue in question was whether there was just cause for removal of plaintiff from the Evanston Police Department. He noted that one of the questions presented was what sanction should be imposed on plaintiff if it were decided that discharge was not indicated.

The hearing officer dismissed count I of the city's complaint after having found that the testimony of the complainant involved in that charge was incredible. With respect to count II, the hearing officer found that the city had sustained its burden of proof. The complaining witness involved in that count was found to be credible. The hearing officer found that plaintiff had, indeed, engaged in sexually suggestive and unprofessional conversation with the woman in contravention of departmental rules.

With respect to count III, the hearing officer found that the police chief's order instructing plaintiff to submit to blood and saliva tests was reasonable in light of the serious charges made against plaintiff and the fact that the investigation was then pending. Further, plain-

tiff was bound to obey the clearly communicated order. It was noted that the subsequent dismissal of count I did not retroactively invalidate the police chief's order.

On June 3, 1982, prior to imposing sanction, a hearing in aggravation and mitigation was held. Following that hearing, the hearing officer's decision was issued. It noted that plaintiff had previously been suspended in 1979 for violations of departmental rules in connection with the arrest and processing of a female. That suspension was confirmed by the circuit court and was pending in the appellate court. The hearing officer found that plaintiff's conduct was not so severe as to make it impossible or impractical for him to function as a police officer. It was determined that plaintiff should be suspended for 120 days. The decision of the hearing officer was adopted as the decision of the Commission.

On July 22, 1981, plaintiff filed a complaint in the circuit court of Cook County for review of the decision. On August 31, 1981, plaintiff's attorney and the attorney for the city stipulated as follows:

> "It is hereby stipulated between Plaintiff John Washington and Defendants City of Evanston and Chief William McHugh that the Answer and Cross-Complaint of Defendants may be filed up to and including the date of September 4, 1981."

On that date, the city filed its answer to plaintiff's complaint and cross-complained against plaintiff, seeking his dismissal from the police department.

The record does not reflect the arguments made by the respective parties in the circuit court. However, it appears that the court issued an order on June 17, 1982, which was later vacated and a final order was issued on August 12, 1982. That order stated in part:

> "2. With respect to Washington's objections to the admission of lie detector test results, this Court finds that it need not rule on the admissibility of this evidence both because it affirms the dismissal of Count I and because it specifically finds that there is enough evidence in the record without regard to or consideration of the lie detector test evidence to support the conviction on Count II (the Lawrence stop) and Count III (the refusal to obey a direct order).
> ***
> 4. With respect to the question of penalties, this court finds that the 120-day suspension imposed by Hearing Officer Goldstein and through him by the Civil Service Commission of Evanston is entirely inappropriate in consideration of the officer's conduct in this case and of the 1979 similar sexual solici-

tation offense.

\*\*\*

> 6. I find the Commission's failure to grant discharge arbitrary, capricious and against the manifest weight of the evidence. I hereby direct the Commission forthwith to enter an Order discharging Officer Washington permanently from the Evanston Police Department, and I vacate my order of June 17, 1982.''

The circuit court denied plaintiff's motion to vacate this final order and this appeal followed.

We deem it appropriate to address the jurisdictional question initially. Plaintiff Washington contends that the circuit court did not have jurisdiction over the city's cross-complaint and thus had no authority to grant the relief sought by the city, *i.e.*, discharge of plaintiff. He makes a lengthy argument, citing voluminous case law as well as sections of the administrative review statute (Ill. Rev. Stat. 1981, ch. 110, par. 3—101 *et seq.*). Plaintiff's basic argument is that the circuit court had no jurisdiction since the cross-complaint was not filed within 35 days of the issuance of the Commission's decision.

Broadly defined, jurisdiction of subject matter is the power of a particular court to hear the type of case that is then before it. (*Lescher v. Barker* (1978), 57 Ill. App. 3d 776, 779, 373 N.E.2d 1007, 1010.) Section 3—103 of the Code of Civil Procedure specifies the time within which review of an administrative decision must be commenced. It states in part:

> "Every action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected thereby." Ill. Rev. Stat. 1981, ch. 110, par. 3—103.

In this case, there is no question that the subject matter before the circuit court was the result of a final administrative decision. The statutory provision cited above gives the circuit court jurisdiction to review all administrative decisions of this type.

We believe that plaintiff has misapprehended the meaning of jurisdiction as applied to review of administrative decisions. What he raises as a jurisdictional bar is simply a procedural limitation on proceedings of this type.

Furthermore, the cross-complaint did not constitute commencement of the review action within the meaning of the statute or the case law cited by plaintiff. The proceeding was commenced within the statutory 35-day period when plaintiff Washington filed his complaint

for review. Therefore, plaintiff's real contention lies with whether the city's cross-complaint was timely filed, not whether the circuit court had jurisdiction over the subject matter.

We note that plaintiff did not raise this issue in his answer to the city's cross-complaint. It was first raised in a post-trial motion, after the circuit court had entered its initial order in June 1982. It is well settled that a party will not be permitted to argue on appeal a defense not interposed in his answer. *Mendelson v. Lillard* (1980), 83 Ill. App. 3d 1088, 1096, 404 N.E.2d 964, 971.

■ Furthermore, it is difficult to understand plaintiff's complaint about the tardiness of the city's cross-complaint, when his attorney stipulated with the city's attorney that the city may do the very thing which now forms the basis of his contention. In our opinion, the question of the timeliness of the city's cross-complaint has been waived for purposes of appeal.

Plaintiff next contends that the polygraph evidence was improperly admitted and cites *Kaske v. City of Rockford* (1983), 96 Ill. 2d 298, 450 N.E.2d 314, in support of his contention that the findings of the Commission must be reversed. We disagree.

The hearing officer specifically found that there was sufficient credible evidence, *excluding* the polygraph evidence, by which plaintiff could be found guilty of the charges contained in count II. In reviewing the Commission's decision, the circuit court also made that finding.

■ Our review of the record shows no evidence of plaintiff having undergone "trial by polygraph" as he asserts. On the contrary, we find that there was sufficient credible evidence on which the hearing officer could base his findings without the polygraph evidence. The testimony of the complaining witness regarding the charges in count II was found to be credible and plaintiff's denial of the allegations was rejected. We see no reason to disturb the findings of the hearing officer, who had the opportunity to observe both parties when they testified at the hearing.

■ Plaintiff next contends that the police chief's request that he submit to blood and saliva tests was arbitrary, unreasonable and unconstitutional. In support of this contention, he again cites *Kaske v. City of Rockford* (1983), 96 Ill. 2d 298, 450 N.E.2d 314. Plaintiff attempts to extend the court's ruling in *Kaske*, which said that police officers did not have to submit to polygraph tests, to this situation. We are unpersuaded by his arguments, and we do not believe that the ruling in *Kaske* was intended for such broad application.

The fourth amendment to the United States Constitution protects

an individual's reasonable expectation of privacy from unreasonable intrusions by the State. (*Division 241 Amalgamated Transit Union (AFL-CIO) v. Suscy* (7th Cir. 1976), 538 F.2d 1264, 1267.) Whether the individual has a reasonable expectation of privacy and whether the intrusion is reasonable are determined by balancing the claims of the public against the interest of the individual. (538 F.2d 1264, 1267.) Furthermore, a governmental agency can place reasonable conditions on public employment. 538 F.2d 1264, 1267.

In this case, plaintiff, a police officer, was charged with a serious breach of departmental rules which, if true, would seriously affect his ability to function effectively. The city clearly had an interest in ensuring that police officers function effectively and according to a code of ethics and departmental rules.

There was an investigation of a serious charge against plaintiff at the time of the police chief's order. The fact that the part of the complaint on which that charge was based was later dismissed does not nullify plaintiff's responsibility as a police officer. He was obligated to obey a direct order which was reasonable under the circumstances.

We next address the question of whether the circuit court acted improperly in vacating the Commission's finding that the proper sanction was suspension for 120 days. The city argues vigorously that the circuit court acted properly in imposing its own sanction in lieu of that imposed by the Commission. However, as the city itself points out, substantial deference must be given to the Commission's ruling. Only when the administrative agency's decision is arbitrary, unreasonable and against the manifest weight of the evidence should the reviewing court act as did the circuit court in this case.

As the city so accurately points out, our supreme court has set forth the principles to be followed in the judicial review of an administrative decision. The function of the court is not to substitute its judgment for that of the administrative agency, but merely to determine whether or not the agency's decision was against the manifest weight of the evidence.

The question of whether cause for discharge exists should be determined by the administrative agency, and that decision will not be reversed unless it is arbitrary, unreasonable or unrelated to the requirements of service. *Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 552, 426 N.E.2d 885, 887.

In this case, the administrative agency held hearings for several days and was familiar with the facts from firsthand testimony. The hearing officer was also familiar with the prior difficulties plaintiff

had had with certain breaches of departmental regulations. The record indicates that all these factors were considered by the hearing officer prior to deciding the proper sanction. Further, a hearing in aggravation and mitigation was held prior to imposition of the sanction.

On administrative review, the issue is not whether the court approves the action taken by the administrative agency, but whether there was substantial evidence to support the decision. (*Starkey v. Illinois Civil Service Com.* (1982), 105 Ill. App. 3d 904, 908, 435 N.E.2d 176, 179.) We believe that the administrative proceeding was the proper forum for determining a sanction in this case. We find nothing in the record to indicate that the 120-day suspension was unreasonable, arbitrary or in contravention of the evidence presented.

Further, we find the Commission had the opportunity to consider discharge as a sanction and specifically rejected it. We hold that the circuit court acted improperly in discharging plaintiff and in vacating the 120-day suspension imposed by the Commission.

Accordingly, we reverse the decision of the circuit court of Cook County and affirm the decision of the Commission.

Reversed.

ROMITI, P.J., and LINN, J., concur.