(No. 74148.—

FRANK CORGIAT, Appellee, v. THE POLICE BOARD OF THE CITY OF CHICAGO *et al.*, Appellants.

*Opinion filed May 20, 1993.*

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal, Mardell Nereim and Benna Ruth Solomon, of counsel), for appellants.

Joseph V. Roddy, of Chicago (Paul D. Geiger and Thomas J. Pleines, of counsel), for appellee.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, of Chicago, of counsel), for *amicus curiae* Illinois State Police.

Beth Anne Janicki, of Springfield, for *amicus curiae* Illinois Municipal League.

James A. Murphy, of Peoria, for *amicus curiae* Illinois Association of Chiefs of Police, Inc.

J. Timothy Eaton, John W. Christy and William T. McCartan, of Coffield, Ungaretti & Harris, of Chicago, for *amicus curiae* Illinois State Lodge of the Fraternal Order of Police.

JUSTICE HEIPLE delivered the opinion of the court:

The Chicago police board (the board) and the superintendent of police appeal the circuit and appellate courts' reversal of the board's decision to discharge plaintiff, a Chicago policeman. We reverse the lower courts and reinstate the board's decision.

On May 24, 1989, the superintendent of police filed charges with the board stemming from plaintiff's conduct on July 30-31, 1987. The superintendent alleged the

violation of three police department rules prohibiting the following types of misconduct:

Rule 2: Any action or conduct which impedes the department's efforts to achieve its policy and goals or brings discredit upon the department.

Rule 6: Disobedience of an order or directive, whether written or oral.

Rule 28: Being absent from duty without proper authorization.

A hearing on these charges was held on January 11, 1990, before a hearing officer of the board. At the close of the superintendent's case, plaintiff renewed a motion to dismiss the charges based on the ground that he had not been given administrative warnings before being ordered to the medical services section of the Chicago police department (the department). The hearing officer denied the motion and, on March 8, 1990, found plaintiff guilty of all three violations. Plaintiff was then discharged from the police department.

Plaintiff filed a petition in the circuit court of Cook County for administrative review of the board's decision. On November 16, 1990, the circuit court ruled that plaintiff's motion to dismiss the charges against him should have been allowed, and reversed the board's decision in its entirety. The appellate court affirmed, ruling that under the Illinois Municipal Code, plaintiff could not be ordered to submit to a urinalysis without being provided with the administrative warnings provided in section 10—1—18.1 of the Illinois Municipal Code (the Code) (Ill. Rev. Stat. 1991, ch. 24, par. 10—1—18.1). (241 Ill. App. 3d 1.) We granted leave to appeal (134 Ill. 2d R. 315).

Evidence at the hearing showed the following facts. Plaintiff was a policeman who, at the time in question, was under investigation by the internal affairs division of the department for suspected distribution of cocaine.

Plaintiff denied knowing that he was under investigation.

As part of this investigation, the department sought to obtain a urine sample. It first requested plaintiff to submit a sample on June 8, 1987. Plaintiff failed to report for the urinalysis and was suspended for one day without pay for refusal to obey an order. On June 19, 1987, the department made its second request for a urine sample. Again, plaintiff refused and, again, he was suspended for one day without pay.

On July 30, 1987, at 9 a.m., plaintiff called the department's employee assistance program, which was set up to aid police officers with drinking and drug problems. Later that day he was informed that a bed was ready at Lutheran General Hospital and that he should check in immediately.

At 1:50 p.m., Lieutenant William Bogue, the acting watch commander in plaintiff's assigned district, received a phone call from Lieutenant Richard Sandberg, commander of the internal affairs division. Sandberg told Bogue to hold plaintiff after the 3 p.m. roll call, in order to get a urinalysis.

Five minutes later Bogue received a phone call from plaintiff, who requested emergency time off. Bogue apparently did not tell plaintiff of Sandberg's order to keep him after that day's roll call, but he did ask plaintiff to call back in 10 minutes so that he could clear plaintiff's request with Sandberg.

However, Sandberg ordered Bogue to deny the request and to order plaintiff to report to the medical services section. When plaintiff called back, Bogue issued the order. Bogue heard a pause followed by a deep sigh, then a scratching sound over which plaintiff said, "What did you say? I can't hear you." The telephone call was then disconnected. Bogue unsuccessfully tried calling back three times in the next 20 minutes.

Plaintiff then left his house to go to the hospital, but was intercepted by Sandberg and Sergeant Manuel Perez. Sandberg ordered plaintiff to accompany him to the medical services section. Plaintiff refused to obey the order. Sandberg informed plaintiff that his refusal to follow a direct order could result in his discharge. Plaintiff still refused, and admitted himself to Lutheran General. Two days later he was placed on medical leave. Bogue filled out a personal action request form reporting plaintiff's two-day absence as unexcused. Plaintiff returned to work on September 4, 1987.

Section 10—1—18.1 of the Code states, in pertinent part:

> "In any municipality of more than 500,000 population, no officer or employee of the police department *** may be removed or discharged *** except for cause upon written charges and after an opportunity to be heard in his own defense by the Police Board. Before any such officer or employee may be interrogated or examined by or before any disciplinary board, or departmental agent or investigator, the results of which hearing, interrogation or examination may be the basis for filing charges seeking his removal or discharge, *** he must be advised in writing that his admissions made in the course of the hearing, interrogation or examination may be used as the basis for charges seeking his removal or discharge; and he must be advised in writing that he has the right to counsel ***; and a complete record of any hearing, interrogation or examination shall be made and a complete transcript thereof made available to such officer or employee without charge and without delay." Ill. Rev. Stat. 1991, ch. 24, par. 10—1—18.1.

Plaintiff seeks to enforce his right to be advised that his admissions made during the course of an examination could be used against him. The crux of the dispute that we are asked to resolve is whether a urine sample is an "admission," and a urinalysis is an "examination,"

within the meaning of the Code. The department argues that the General Assembly did not contemplate the collection of urine when it imposed upon the police department the obligation to provide these rights. We agree.

Initially, we note that the order that plaintiff disobeyed was not an order to take a urine test. Rather, it was an order to report to the medical services section. Sandberg testified at the hearing that he intended to inform plaintiff of his administrative rights when they arrived. Any entitlement plaintiff might have had to advice concerning his rights would not have set in until he was ordered to undergo an examination, regardless of how broadly that term is defined. Thus, plaintiff's insubordination was at best premature.

More importantly, plaintiff's insubordination was not authorized by the Code. The rights plaintiff seeks under the Code simply do not apply when an officer is ordered to submit a urine sample.

"The terms in a statute are not to be considered in a vacuum. They must be construed in the context of what they define ***." (*M.I.G. Investments, Inc. v. Environmental Protection Agency* (1988), 122 Ill. 2d 392, 400.) Words and phrases should not be construed in isolation, but must be construed in light of the statute as a whole. (*Antunes v. Sookhakitch* (1992), 146 Ill. 2d 477, 484.) When one looks to the rights that plaintiff feels he should have been apprised of, it becomes apparent that the construction urged by plaintiff is at odds with these very basic rules of statutory construction. If applicable to plaintiff, the Code would have given him the right to counsel at, and a complete record and transcript of, the urinalysis. Neither of these rights could aid an officer in any manner. "The courts presume that the General Assembly, in passing legislation, did not intend absurdity, inconvenience or injustice." *Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 363.

Regarding plaintiff's alleged right to counsel, his argument begs the question of what counsel could do for an officer who is ordered to submit a urine sample. The department may reasonably order an officer to submit to a urinalysis. (*Kinter v. Board of Fire & Police Commissioners* (1990), 194 Ill. App. 3d 126, 132-33.) Thus, all counsel could do for his client is advise him that he must provide the sample. It would be pointless for the General Assembly to prohibit the collection of urine until an attorney assures a police officer that the collection is authorized. We decline to give the Code such a construction.

Plaintiff makes much of the fact that the urinalysis results could have potentially been the basis for criminal proceedings. This possibility, plaintiff argues, demonstrates the need for counsel concerning an officer's right to refuse to submit a urine sample.

Since criminal charges are not at issue in this case, this argument is a red herring. To the extent that a urine sample is obtained without compliance with a criminal defendant's constitutional rights, the urine sample can be excluded from evidence in the corresponding criminal trial. Here we are dealing only with the termination of an officer who, all agree, failed to obey direct orders from a superior. We express no opinion as to the extent of an officer's right to counsel or to his right to refuse or object to a urine test to be used in a criminal proceeding.

Regarding the alleged right to a complete transcript, this too is inapplicable in the urinalysis setting. A urinalysis does not include anything of relevance that could be recorded in a transcript. Neither the officer nor the collector is required to speak, and anything they might choose to say could hardly be helpful if preserved in a paper record.

The appellate court, in affirming the trial court, relied principally on *City of Springfield Department of Public Affairs v. Civil Service Comm'n* (1983), 112 Ill. App. 3d 856. There, the appellate court analyzed section 10—1—18 of the Code, which is identical (to the extent relevant) to section 10—1—18.1, except that it applies to municipalities with populations under 500,000. That court ruled that a breathalyzer test was an examination under the Code, and therefore advice as to administrative rights was required before the test could be administered.

We believe the *Springfield* court erred in its construction of the Code. It considered the term "examination" in isolation, without regard to its context in the statute. It did not mention that the Code anticipates examinations that produce admissions; nor did it adequately address why a legislative body would want counsel present or a transcript taken of a physical examination, one which the examining body had an undisputed right to order. (*Springfield*, 112 Ill. App. 3d at 859-61.) A urinalysis is not an examination under the Code, and administrative warnings need not be issued before an officer is ordered to submit a urine sample.

## CONCLUSION

Plaintiff's rights were complied with at every stage in this case. The lower courts incorrectly reversed the determination of the police board to discharge plaintiff from the Chicago police department. We therefore reverse those decisions and reinstate the decision of the police board. Because of our disposition, we need not address the other two issues raised by the department.

*Appellate court reversed;*
*circuit court reversed;*
*decision of the police*
*board reinstated.*