BIARS DAVIS, Plaintiff-Appellee, v. THE CITY OF EVANSTON *et al.*, Defendants-Appellants.

First District (6th Division)   No. 1—92—1641

Opinion filed December 30, 1993.

Jack M. Siegel, Corporation Counsel, of Evanston, and Kenneth C. Shepro, of Altheimer & Gray, of Chicago, for appellants.

George T. Donoghue III, of Chicago, for appellee.

JUSTICE EGAN delivered the opinion of the court:

This is an appeal by the defendants, the City of Evanston (City) and the Evanston Civil Service Commission (Commission), from an order of the circuit court reversing an order of the Commission which discharged the plaintiff, Biars Davis, from the Evanston police department.

Evanston Police Chief Ernest Jacobi filed a complaint with the Commission seeking the discharge of Davis. At the time the com-

plaint was filed, Davis had been an Evanston police officer for 13 years. Counts I through VI of the complaint alleged that Davis had been indicted for failure to file Illinois income tax returns for 1983 and 1984 and that Davis pleaded guilty to the misdemeanor of willfully failing to file his 1983 return. The complaint alleged that the defendant's criminal acts violated six individual rules or articles from the department's regulations. Count VII of the complaint alleged that beginning on September 20, 1976, the plaintiff had committed 29 separate violations of department rules, and that he had received some type of discipline which included 16 warnings and reprimands and 13 suspensions of varying lengths. After an evidentiary hearing, the hearing officer found that the evidence established that Davis had willfully failed to file his tax returns and recommended that he be discharged. The Commission adopted the hearing officer's recommendation and discharged Davis.

Davis filed a complaint for administrative review, and the trial judge reversed the Commission's order. The judge held that the tax offense was irrelevant to Davis' position because it had "nothing to do with this police work."

■ Davis first contends that the evidence does not show that he willfully failed to file his State income tax return. We reject this argument. First, although the complaint alleges Davis pleaded guilty to a willful failure to file, it concludes merely that his "failure to file" a tax return violated department rules. Therefore, the City did not have to prove that Davis' actions were willful. (See *Sutton v. Civil Service Comm'n* (1982), 91 Ill. 2d 404, 438 N.E.2d 147 (proof of the specific elements of a criminal offense relating to a rule violation is not necessary when the complaint does not require the actual criminal offense).) Second, Davis pleaded guilty to willfully failing to file his 1983 Illinois tax return and thus admitted that his actions were willful. Third, there was extensive evidence before the Commission to support a finding that he willfully failed to file a proper tax return.

Davis' 1983 Illinois 1040 tax form and his State and Federal W-4 withholding forms executed in December 1983 were introduced into evidence. Davis' 1983 Illinois 1040 form was signed by Davis and mailed to the Illinois Department of Revenue (IDR) on April 12, 1984. Davis placed the word "object" on the lines for adjusted gross income, additions to income, total income, and net income. His form claimed three exemptions and noted that approximately $752 had been withheld from his paycheck. He wrote "approximately $752" on the lines for amount overpaid and amount to be refunded to him. No W-2 form was attached to the 1040 form.

On the December 1983 Federal W-4 form, the box "exempt" was

checked and the number "90" was written into the line for the claimed number of exemptions. On the State W-4 form, the number of "personal dependency exemptions" listed was 90. Davis testified that he only checked the "exempt" box on the Federal W-4, and denied writing the number "90" in the space for exemptions on either form. The City's information systems manager, Jeanne Kornatz, testified that her office and employees are the custodians of all City employees' W-4 forms. She testified that her office would not alter a W-4 without discussing the alteration with the employee, and that Davis' W-4's had not been altered by her office.

Special Assistant Attorney General Edward Carter testified that he sought the indictment of Davis on behalf of the IDR for the misdemeanor of willfully failing to file an Illinois income tax form in 1983 and the felony of willfully failing to file an Illinois income tax form in 1984. The IDR believed that the 1983 form, as filed by Davis, does not constitute a "filing" because "the document does not contain information from which the tax can be calculated." Carter testified that this is true despite the fact that Davis did not specifically refuse to pay taxes anywhere on the form. The IDR prosecuted Davis because the lack of a W-2 and the word "object" on the lines for adjusted gross income and total additions to adjusted gross income would not allow the State to compute the tax. Further, the department believed Davis willfully failed to file his return in 1983 because he had filed a proper return in 1982.

Carter explained that the 1983 Illinois 1040 form submitted by Davis is known as a "Fifth Amendment return," on which "a taxpayer makes a blanket assertion of the Fifth Amendment." Carter and the Department of Revenue decided to offer Davis a plea bargain because they could not obtain the testimony of the man who served as a tax advisor to Davis, Charles Myers, who was under Federal indictment. Davis, who was represented by a private attorney at the criminal proceedings, accepted this agreement, and on February 19, 1987, he pleaded guilty to the misdemeanor charge of willfully failing to file his 1983 Illinois tax return. In exchange, the State dismissed the 1984 felony charge and recommended a sentence of supervision. The trial judge sentenced Davis to supervision for one year and ordered him to file proper Illinois tax returns for 1983 and 1984, pay all tax due and pay all applicable penalties and fines. By the end of the hearing, Davis had successfully complied with all aspects of his supervision, and on March 22, 1988, the trial judge ruled that the supervision was satisfactorily terminated.

Davis was given immunity by the Federal government from prosecution for his filing of Federal Fifth Amendment 1040 returns in

1983 and 1984. This grant of immunity was in exchange for testimony he gave against Myers before a Federal grand jury and at Myers' Federal trial.

Davis admitted that he wrote "object" on his 1983 Illinois 1040 but contended that he did so in good faith because he believed to the best of his knowledge that it was a valid return. He based his actions on the advice of Myers, who served as his tax advisor.

Davis knew he was solely liable for his taxes and understood he was required to pay taxes. He believed he had paid taxes through the amount withheld from his paycheck. Also, he stated that he could not complete the 1040 form because he did not know how much money he made in 1983 due to his loss of his W-2 form. Nonetheless, Davis admitted that when he completed the 1983 Illinois 1040 form, he did not want to divulge the amount of his income. He conceded that he claimed six dependent deductions on a W-4 he completed in 1984, although in reality he only had three. He pleaded guilty on the advice of his attorney although he believed he was innocent. However, when he gave his plea to the criminal trial judge, he told the judge he was guilty and admitted to willfully failing to file a return for 1983.

We judge that a fact finder could conclude that Davis had willfully failed to file a proper Illinois 1983 tax return. Of considerable importance, contrary to the assertion made in Davis' brief, is the fact that he did seek a financial advantage in the filing of 1983 income tax return because *he sought a refund* of all the money that had been withheld.

■ Davis next contends that the hearing officer and Commission improperly considered his plea of guilty. We must reject this argument also. Davis bases his argument on an alleged split of authority in Illinois regarding whether a criminal court judge, *when sentencing*, may consider a prior disposition of supervision. (Compare *People v. West* (1987), 160 Ill. App. 3d 841, 514 N.E.2d 1, and *People v. Calvert* (1981), 100 Ill. App. 3d 510, 426 N.E.2d 1218.) Davis also relies on section 5—6—3.1(f) of the Unified Code of Corrections (Ill. Rev. Stat. 1991, ch. 38, par. 1005—6—3.1(f)). That section does not demand automatic expungement of a record of supervision but allows a defendant who successfully completes his supervision to move for expungement of his arrest record two years after the discharge of defendant and dismissal of the charges. We judge that the cases cited and the statute have no bearing on the issue of admissibility of a plea of guilty when used to establish a fact. By pleading guilty a defendant admits all of the facts charged in an indictment (*People v. Johnson* (1963), 28 Ill. 2d 531, 193 N.E.2d 39) and acknowledges his

guilt. (*People v. Bergman* (1984), 121 Ill. App. 3d 100, 458 N.E.2d 1370.) In *Douglas v. Daniels* (1978), 64 Ill. App. 3d 1022, 382 N.E.2d 90, a police board based its decision to discharge an officer on admissions he made regarding criminal charges against him. The admissions were suppressed in the criminal proceeding, and the officer's criminal conviction was reversed on appeal. Nonetheless, on administrative review the appellate court held that the police board properly considered the admissions. (*Cf. Everly v. Chicago Police Board* (1983), 119 Ill. App. 3d 631, 456 N.E.2d 992 (upholding an officer's discharge although it was based solely on the transcript of a criminal trial in which the officer was acquitted).) We judge, therefore, that the Commission properly considered Davis' plea of guilty even though he was subsequently granted supervision.

■ Davis also contends that the Commission violated police department rules when it considered his previous disciplinary record. The Commission considered 29 previous incidents during Davis' 13 years as a police officer for which he received some type of discipline. His record included nine separate incidents occurring on or after June 25, 1982. The Commission concluded that the evidence of the tax violation would not, standing alone, be sufficient to justify the discharge of Davis but that discharge was an appropriate sanction because the "repetitive pattern" of previous infractions on the part of Davis plus the tax violation constituted cause for discharge. The nine incidents which occurred after June 25, 1982, included allowing a prisoner to escape, being absent without leave, failing to inventory property, defacing a prisoner's property, two incidents of failing to attend a scheduled court hearing, refusing to give a star number and name when requested to do so by a citizen, engaging in an unjustified verbal and physical altercation with a citizen, being disrespectful to a citizen and being disrespectful to a supervisor. The discipline imposed in those nine incidents ranged from a one-day suspension to two five-day suspensions. Former Police Chief William Logan told Davis at the time he was suspended for five days following his physical and verbal altercation with a citizen that any further serious infraction could lead to his discharge. Despite that warning, Davis was later disrespectful to a supervisor and failed to attend a scheduled court hearing in May 1985.

Davis refers us to the following language of a police department personnel rule which includes a description of the "policy" of the department in disciplinary matters:

> "Each time the same or similar infractions occur, more stringent disciplinary action takes place *** however, totally unrelated previous disciplinary actions should not be considered in progressing the severity of the discipline."

Relying on the quoted language, Davis argues that the previous disciplinary actions could not be considered because they were not the "same or similar infractions" as a failure to file an income tax return.

Davis' quotation of the applicable policy is selective and incomplete. A more complete quotation of the rule would include the following language:

> "Progressive discipline is basically a series of disciplinary actions, corrective in nature, starting with a verbal or written reprimand. Each time the same or similar infractions occur, more stringent disciplinary action takes place. It is important in invoking progressive discipline, up to and including dismissal, that each time disciplinary action is contemplated, it must be definitely established that an infraction did occur which is organizationally inappropriate. To definitely establish that an infraction did occur means that a supervisor must be able to sufficiently substantiate the occurrence of any infraction.
>
> After the infraction has been established, then an assessment of the type of corrective action required is made, *taking into account the previous disciplinary actions that have been taken. It does not necessarily mean that an employee is required to violate the same rule or have the same incident occur in order to draw upon previous corrective disciplinary actions.* However, totally unrelated previous disciplinary actions should not be considered in progressing the severity of discipline.
>
> When there is a series of minor infractions and where there have been several verbal reprimands, written reprimands or suspensions occurring over a period of time, and the employee's general behavior pattern is such that the previous disciplinary actions can be included, they may be used in determining the next level of progressive discipline, if any, in determining the proper action to be taken. If past behavior relates to the present problem, past action should be taken into consideration. If the relationship is unclear, consult with the Director of Personnel." (Emphasis added.)

Judith Witt, the City's director of personnel, explained that the City keeps several files on an officer. For liability and administrative review purposes, one file containing notices of all discipline ever imposed on an officer is kept in the internal investigation bureau of the police department. The City obtained the evidence of all 29 disciplinary actions against Davis from the internal investigation files.

Witt testified that a violation might be serious enough to require a strong discipline under the policy, even without a similar earlier

infraction. She agreed that "totally unrelated" prior misconduct should not be considered in *progressing* discipline, but she also emphasized the policy statement which involved a general behavior pattern.

Lieutenant John Popadowski, the head of the internal investigation bureau, testified that the bureau is required to maintain files on each officer which outline all discipline taken against the officer. Only internal investigation officers and the chief of police have access to these files.

Retired Police Chief William Logan testified that he reviewed Davis' internal investigation file, including the notices of all 29 disciplinary incidents, before initiating these discharge proceedings against Davis. As chief, he had access to the internal investigation file for this purpose.

Logan and Chief Jacobi, who continued the complaint against Davis when Logan retired, both testified about the progressive discipline policy. The police chief is the individual ultimately responsible for implementing the policy in the department. Jacobi understood the policy to mean that all avenues of discipline should be exhausted before discharge is requested and that "full consideration should be given to the police work history, including the entire experience" of the officer when imposing discipline. He stated that dissimilar instances of misconduct still may receive progressive discipline, under the portion of the policy that discusses a general behavior pattern. This is appropriate when an officer has "demonstrated repeated violations, *** a propensity for repeated acts and violations." Jacobi made the final recommendation to discharge Davis; he testified that he did so primarily on the basis of the tax charges, but also on the basis of Davis' disciplinary record, which demonstrated an "inability to get along with people, both supervisors and the public."

Logan also grounded his decision that Davis should be discharged in part on Davis' disciplinary record, although most of his decision was based on the tax offenses. When imposing one of Davis' more recent suspensions, Logan told Davis he would be fired for the next incident of misconduct.

We need not address the argument of the City and Commission that the Commission is not bound by the policy of the police department because we agree with the City and the Commission that they did not violate the department's policy. When a court considers agency rules, "it is of tantamount importance that deference be given an administrative agency's own interpretation" of those rules. (*Rend Lake College Federation of Teachers, Local 3708 v. Board of Community College, District No. 521* (1980), 84 Ill. App. 3d 308, 311,

405 N.E.2d 364, 368.) General rules of statutory construction apply, but a reviewing court may interfere with the agency's interpretation of the rules "where administrative interpretation is *plainly erroneous*" (emphasis in original) (*Rend Lake College*, 84 Ill. App. 3d at 311), or unreasonable. (*Brown v. Sexner* (1980), 85 Ill. App. 3d 139, 405 N.E.2d 1082.) Although the policy is not perfectly written, it does indicate that a series of misconduct and a "general behavior pattern" may be used when determining discipline.

There can be no dispute that there was a general pattern of misconduct by Davis. The Commission explicitly recognized this in its final decision. Jacobi, as the department member charged with implementing the policy, explained that such a pattern of repeated violations allows all prior incidents, even if dissimilar, to be considered in discipline. Additionally, Davis was on notice that his past conduct could and would be used against him because Logan told Davis that his next rule infraction would result in discharge. Interpreting the policy to allow consideration of past conduct under the facts of this case is not unreasonable or plainly erroneous. Indeed, we believe the interpretation urged upon us by Davis—that only similar acts may be considered in aggravation—would be unreasonable.

The conclusion that the admission of all 29 instances of prior conduct for aggravation was proper is supported by general administrative law on this issue. In *Allman v. Police Board* (1986), 140 Ill. App. 3d 1038, 489 N.E.2d 929, a police board discharged an officer after determining he violated several rules. The appellate court affirmed the Board's order discharging the officer, finding that his commendations and the other mitigating evidence did not require his reinstatement and noting, "the police officer had received an apparently lengthy prior suspension." *Allman*, 140 Ill. App. 3d at 1041.

There are several other Illinois cases where the previous record of an employee was considered when determining the proper discipline to be imposed by the civil service commission. In *Brown v. Civil Service Comm'n* (1985), 133 Ill. App. 3d 35, the court noted that an employee's disciplinary record is "a factor that does have bearing upon the issue of cause for discharge." *Brown*, 133 Ill. App. 3d at 41. See also *Washington v. Civil Service Comm'n* (1983), 120 Ill. App. 3d 822, 458 N.E.2d 952; *Fox v. Illinois Civil Service Comm'n* (1978), 66 Ill. App. 3d 381, 383 N.E.2d 1201.

■ Davis next contends that his right to due process was violated by introduction of the evidence of the other 29 disciplinary actions. The hearing officer denied Davis' motion to bifurcate the hearing and to hear first only the allegations that he violated the department

rules by failure to file a tax return before considering the allegations in count VII, which contained the charges that he had previously been disciplined on 29 occasions. The hearing officer allowed introduction only of evidence of the last nine violations in the Commission's case in chief. The Commission remanded the case to the hearing officer to consider all previous disciplinary actions but only in aggravation. Upon remand, the hearing officer struck count VII and expressly stated that he was considering the evidence of the previous disciplinary actions only in aggravation. Davis now argues that the presence of count VII and testimony elicited supporting the allegations of count VII was a violation of due process. We must reject this claim also.

First, the evidence about the other previous offenses was considered only in aggravation, and the hearing officer and Commission made certain that they were not punishing Davis twice for the same conduct but were using the previous discipline in a manner consistent with Illinois law. Second, Davis had the opportunity to present evidence in mitigation, and, contrary to his assertion in this court, took advantage of this opportunity by calling four character witnesses and submitting evidence of his honorable mentions and commendations. Third, the hearing officer dismissed count VII, and this decision was adopted by the Commission. Davis was given every opportunity to present evidence, cross-examine and refute the department's witnesses and argue his case. We conclude that he was not denied due process.

■ The City and Commission argue that the trial judge incorrectly concluded that the tax offense was unrelated to department service. Davis, as a police officer, could only be discharged for cause. (*Humbles v. Board of Fire & Police Commissioners* (1977), 53 Ill. App. 3d 731, 368 N.E.2d 1049.) "Cause" has been judicially defined as "some substantial shortcoming which renders [the employee's] continuance in his office or employment in some way detrimental to the discipline and efficiency of the service." (*Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, 105, 449 N.E.2d 115, 117.) The agency's determination of cause is given great deference; "[b]ecause there is no statutory definition of cause, whether a charge is sufficient cause for discharge is generally for the agency to determine." (*Sexner*, 85 Ill. App. 3d at 147.) On review, the question is not whether this court would decide upon a more lenient sanction than discharge were it to determine initially what discipline would be appropriate. (*Sutton*, 91 Ill. 2d at 411.) The cases cited by Davis are factually distinguishable. In *Humbles*, a police officer initially lied about the nature of a court appearance he was making while on duty by not

revealing that it involved his wife's divorce case instead of police business. The court noted that this offense did not "carry the implication that [the officer was] unfit to serve as a police officer." (*Humbles*, 53 Ill. App. 3d at 734.) After considering that this was an isolated incident, that the department had an "unwritten rule" permitting such appearances and that there was "no indication [the officer's] action had the effect of lowering morale or undermining public confidence" in the department, the court reversed the agency's decision. *Humbles*, 53 Ill. App. 3d at 734-35.

Similarly, the court reversed the discharge decision in *Kirsch v. Rochford* (1977), 55 Ill. App. 3d 1042, 371 N.E.2d 899. In *Kirsch*, the officer created a disturbance while he was drunk at an airport and while he was being transported from the airport to the police station. The court noted that the officer cooperated with the other officers who took him to the station and had been an officer for 18 years. In contrast, the City and Commission rely on many cases where the discharged officers committed some type of criminal act. See, *e.g.*, *Sheehan v. Board of Fire & Police Commissioners* (1987), 158 Ill. App. 3d 275, 509 N.E.2d 467; *King v. City of Chicago* (1978), 60 Ill. App. 3d 504, 377 N.E.2d 102.

We believe the rationale of *Sheehan* and *King* should apply to this case. The actions of Davis, like the *Sheehan* and *King* officers, involved illegal acts that demonstrated his disregard for the law. The testimony of Jacobi and Logan explained how that disregard relates to the requirements of police work in Evanston. The Commission specifically found that Davis' illegal act in failing to file an income tax return, although insufficient to support discharge standing alone, when coupled with his repeated rule violations, showed his inability to function as an officer without impairing the work of the department. In light of this testimony, the trial judge should not have substituted his judgment for that of the Commission.

■ Davis' last contention is that the charges were filed against him because of his race. We agree with the hearing officer and the City and Commission that the defendant's claim was irrelevant to the question of whether he had failed to file his income tax return. This is not to say that Davis could not have introduced evidence that some witness had displayed racial animus toward Davis. Such evidence would have been admissible in passing on the credibility of the witness. But no such evidence was proffered for that purpose.

As the City and Commission note, this is not an action for violation of section 1983 of the Civil Rights Act. (42 U.S.C. § 1983 (1988).) This is a discharge proceeding against Davis, and while selective enforcement or discrimination was deemed relevant to the

level of discipline involved in one case (*Fox v. Illinois Civil Service Comm'n* (1978), 66 Ill. App. 3d 381, 383 N.E.2d 1201), that case and many others hold that discrimination or selective enforcement "cannot excuse [employee] behavior" where there is a finding that the employee violated employment rules. (*Fox*, 66 Ill. App. 3d at 392.) Several cases have explained that sufficient cause might exist to discipline a police officer "regardless of whether other officers had received different treatment. [Citations.]" (*Jones v. Civil Service Comm'n* (1979), 80 Ill. App. 3d 74, 76, 399 N.E.2d 256, 258; see also *Sheehan v. Board of Fire & Police Commissioners* (1987), 158 Ill. App. 3d 275, 509 N.E.2d 467; *Albert v. Board of Fire & Police Comm'n* (1981), 99 Ill. App. 3d 688, 425 N.E.2d 1158.) We have considered the evidence proffered by Davis and judge that the hearing officer and the Commission properly determined that Davis had failed to show that the charges against him were prompted by racial prejudice. We note that the original decision to seek the discharge of Davis was made by then Police Chief Logan, who, like Davis, is an African-American.

For these reasons, we hold that the evidence supported a finding of good cause for the discharge of Davis.

The judgment of the circuit court is reversed.

Judgment reversed.

McNAMARA, P.J., and RAKOWSKI, J., concur.