JOSEPH WASHINGTON III, Plaintiff-Appellee, v. POLICE BOARD OF THE CITY OF CHICAGO, Defendant (Matt Rodriguez, Defendant-Appellant).

First District (6th Division)    No. 1—92—2240

Opinion filed February 4, 1994.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Julian N. Henriques, Jr., Assistant Corporation Counsel, of counsel), for appellant.

Law Offices of Thomas J. Pleines, of Chicago (Thomas J. Pleines, of counsel), for appellee.

JUSTICE GIANNIS delivered the opinion of the court:

Following an administrative hearing, the Police Board of the City of Chicago (the board or the Police Board) issued a decision discharging plaintiff-appellee, Joseph Washington (plaintiff), from his position as a Chicago police officer. The board based its ruling upon a finding that plaintiff had possessed and used cocaine in violation of Chicago police department rules. On administrative review, the circuit court reversed the board's findings on the ground that the Chicago police department (the department) had failed to advise plaintiff of his rights before it ordered him to submit to a urine test. The superintendent of police, Matt Rodriguez, now appeals the decision of the circuit court. We have jurisdiction under Supreme Court Rules 301 and 303 (134 Ill. 2d Rules 301, 303).

On February 28, 1989, the department instituted an investigation into allegations that plaintiff had obtained Tylenol 3 (with codeine) through the use of a forged prescription. Pursuant to this investigation, plaintiff's supervisors informed him that he was required to go with them to the department's medical section for a drug test. Plaintiff was not informed of any rights he may have had at this time with regard to the testing.

At the medical section plaintiff produced a urine sample. The laboratory chosen by the department to test the sample returned a result that indicated the presence of both codeine and cocaine. The results were negative for the presence of phencyclidine, amphetamine, barbiturates, methadone, benzodiazepines (Valium and Librium), cannabinoids (marijuana metabolite), methaqualone and propoxyphene. Plaintiff was criminally charged regarding the false prescriptions. See Ill. Rev. Stat. 1989, ch. 56$^1$/$_2$, par. 1406(b) (now codified at 720 ILCS 570/406(b) (West 1992)).

On May 17, 1990, plaintiff pled guilty to one count of misdemeanor attempt. Judgment was entered on the plea and defendant was sentenced to one year's conditional discharge.

On August 3, 1990, the superintendent of police filed charges before the Police Board with regard to plaintiff's admitted violation of the law (misdemeanor attempt). A hearing was held before the Police Board and plaintiff was suspended without pay for 90 days.

Previously, on September 11, 1990, the superintendent had filed a separate case before the Police Board regarding allegations that plaintiff had illegally possessed and/or used both codeine and cocaine. A second proceeding on these charges began May 21, 1991. At these proceedings plaintiff stated that he watched as his sample was placed into an empty bottle, numbered and sealed. When examined by his own attorney, plaintiff stated that he was under the care of a physician at the time of the drug test and that his doctor had given him a prescription for Tylenol 3 with codeine. Plaintiff denied that he ever used cocaine "while he was a police officer" and denied that the sample he produced tested positive because he was "a user of cocaine on March 8, 1989."

Detective George Brown testified that he transported plaintiff's urine sample to the laboratory on March 14, 1989. He stated that some 600 samples were taken to the laboratory that day in multiple cars but that plaintiff's sample was one of four samples that he personally transported.

The proceedings before the Police Board were continued until approximately a month later on June 24, 1991. The department again called plaintiff to the witness stand as an adverse witness. Once again plaintiff testified that he did not use drugs while he was a member of the department. When he was asked if he had ever told anyone that he used drugs while a member of the department, however, plaintiff answered that he had done so. The department asked plaintiff if he had ever told Dr. Anderson Freeman on July 20, 1989, that he used drugs while a member of the department. Plaintiff's counsel objected and argued that what plaintiff said on July 20, 1989, several months after the charges had been initiated, was not relevant to the pending charges. Counsel for the department answered that he was asking the question for impeachment purposes only and that he could "prove it up." The hearing officer noted that plaintiff had just admitted that he told someone that he had used drugs while a member of the department so that the question was not impeaching. The objection was sustained.

The department next asked plaintiff if, "in the Spring of 1989," he was in a 12-step program for drug abuse. Plaintiff answered "yes."

Plaintiff then admitted that he was, at that time and while a member of the police force, being treated for cocaine abuse. When asked why he had answered earlier in the proceedings that he did not use cocaine while a member of the police force, plaintiff stated that he believed the question only pertained to whether he used drugs while on active duty. Plaintiff then admitted that he used cocaine in March of 1989.

Doyle Lonski, Dr. Vinod Soni and Dr. Krishan Kaista each testified as to how plaintiff's urine was tested for various substances through the use of both an EMIT and GCMS test. Lonski stated that when he received the sample it appeared intact and was without any signs of tampering. Lonski and Soni calculated the calibration values for the EMIT testing device, and Lonski testified that he set up the GCMS testing device for use on plaintiff's sample. The department offered testimony from each of these men as to how the tests were conducted and how the machines were calibrated. Kaista testified that he was the certifying chemist for the laboratory and certified the chain of custody documents and reports to the department which indicated that plaintiff's sample contained traces of cocaine and codeine.

At the close of proceedings the hearing officer took the matter under advisement. The Police Board subsequently issued its findings and decisions which found plaintiff "guilty" of violating the rules and regulations of the department.

On administrative review and on June 8, 1992, the circuit court issued an order reversing the board's decision. The court based its order on the department's failure to notify plaintiff of his administrative rights before requiring him to submit to a urine test. The court specifically declined to review the question of whether the board's findings were against the manifest weight of the evidence. It is this order which we now review.

■ When a purpose of a police investigation is to form a basis for discharging an officer, the officer may not be subjected to a "hearing" or be "interrogated" or "examined" without receiving the benefit of certain administrative rights. (Ill. Rev. Stat. 1991, ch. 24, par. 10—1—18.1 (now codified at 65 ILCS 5/10—1—18.1 (West 1992)).) Included in these rights are the right to have counsel present during any examination or interrogation, the right to be told in writing the nature of the charges and the right to be informed in writing that any admissions made by the officer may be used as a basis for discharge.

The trial court on administrative review reversed the board's decision solely on the grounds that plaintiff was not informed of his statutory rights before being ordered to undergo urinalysis. The

circuit court's order was consistent with the appellate court decision in *Corgiat v. Police Board* (1992), 241 Ill. App. 3d 1, 612 N.E.2d 1343. As the department now points out, however, the supreme court reversed *Corgiat* on May 20, 1993. (*Corgiat v. Police Board* (1993), 155 Ill. 2d 384, 614 N.E.2d 1232.) The supreme court determined in *Corgiat* that the same municipal code provisions relied upon by plaintiff here do not apply when a Chicago police officer is ordered to undergo urinalysis by his supervisor. (*Corgiat*, 155 Ill. 2d at 389.) The court reached this result by concluding that a urinalysis is not an "examination" as that term is used by the statute. (*Corgiat*, 155 Ill. 2d at 391.) Implicit in the court's decision is that an officer ordered to undergo urinalysis is also not subjected to an "interrogation" or "hearing."

■ The arguments now made by plaintiff are identical to the arguments made by the police officer in *Corgiat*. Because the supreme court has conclusively rejected these claims, however, the basis for the trial court's reversal of the board's decision is no longer valid.

Recognizing the significance of the *Corgiat* decision, plaintiff takes as a fall-back position the argument that the department failed to read him *Miranda* rights before it required him to submit to the drug test. In *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, the United States Supreme Court held that the fifth amendment privilege against self-incrimination applies where an individual is subjected to custodial interrogation. Plaintiff in this case, however, was not in "custody" when he was ordered to submit to the urine sample and, again, we believe that *Corgiat* determined that an officer in plaintiff's situation is not subjected to "interrogation." The fact that the department's investigation may have ultimately resulted in criminal charges against plaintiff does not change our analysis as this is the same argument advanced and rejected by the supreme court in *Corgiat*. *Corgiat*, 155 Ill. 2d at 390.

■ Defendant next raises a claim that requiring him to submit to a drug test violated his fourth amendment rights under the Federal Constitution (U.S. Const., amend. IV) as well as the provisions of our State constitution's sister provisions. (See Ill. Const. 1970, art. I, § 6.) These same claims by a police officer were considered and rejected, however, in *Washington v. Civil Service Comm'n* (1983), 120 Ill. App. 3d 822, 828-29, 458 N.E.2d 952.

It is well established that a court of review may affirm a decision of the trial court upon any grounds appearing in the record even though the lower court's determination was based upon an erroneous premise. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9.) Plaintiff argues that if his statutory

and constitutional challenges are rejected, we must affirm the circuit court's decision because there was insufficient evidence presented to the board for the board to have found that plaintiff used cocaine in violation of department rules.

The standard of review for such a claim is clear. An administrative agency's findings of fact on review "shall be held prima facie true and correct." (735 ILCS 5/3—110 (West 1992), formerly Ill. Rev. Stat. 1991, ch. 110, par. 3—110.) We may ask only whether the findings below are against the manifest weight of the evidence. (*Launius v. Board of Fire & Police Commissioners* (1992), 151 Ill. 2d 419, 603 N.E.2d 477; *Tate v. Police Board* (1993), 241 Ill. App. 3d 927, 609 N.E.2d 762.) We are precluded from reweighing the evidence to determine where the preponderance of the evidence lies. (*Mead v. Board of Review* (1986), 143 Ill. App. 3d 1088, 1094, 494 N.E.2d 171.) The focus of review is whether the board's decision is just and reasonable in light of the evidence in the record. *Mead*, 143 Ill. App. 3d at 1095.

Plaintiff argues that his statements in the record that he used cocaine in March of 1989 cannot be used against him as proof of the substantive charges. He also claims that the laboratory report finding cocaine metabolite in his urine was completely impeached. We disagree.

■ After carefully reviewing the record we find that plaintiff's statements that he used cocaine in March of 1989 amounted to an admission of the charges against him. These admissions squarely support the Police Board's express finding that Washington was guilty of the "ingestion, possession, and/or use of cocaine." We reject plaintiff's contention that the board was limited to using this testimony for the "limited purpose of impeachment." The record shows that plaintiff's attorney objected to questions directed at what occurred in the summer of 1989 which were not relevant to the charges concerning plaintiff's alleged use of cocaine in March of that year. The department's attorney agreed that it would use *this* testimony "for impeachment purposes only." The questions that followed, however, were directed at what occurred in March of 1989, were not the subject of plaintiff's objection and the plaintiff has no basis to argue that this testimony is irrelevant to the substance of the charges against him.

Moreover, we believe the drug tests relied upon by the department were sufficient to support the conclusion that defendant used cocaine in violation of the department's rules. There is no dispute that the department followed proper procedures in the handling and delivery of plaintiff's sample to the laboratory. While plaintiff's attorney was

able to demonstrate that the procedures used by the laboratory in its processing of plaintiff's sample could be greatly improved, we believe the defects in the paperwork and the inconsistencies in the testimony presented by the laboratory personnel go to the weight of the evidence heard by the board. We see nothing in the record to indicate that the board failed to properly weigh the evidence. See *Martin v. Thompson* (1990), 195 Ill. App. 3d 43, 49, 551 N.E.2d 1082.

For the foregoing reasons, the order of the circuit court is reversed, and the decision of the Police Board discharging plaintiff from his position as a Chicago police officer is reinstated.

Reversed; decision reinstated.

McNAMARA and RAKOWSKI, JJ., concur.