## In the

## United States Court of Appeals

### For the Seventh Circuit

No. 08-1450

PHILIP C. BODENSTAB, M.D.,

*Plaintiff-Appellant,*

*v.*

COUNTY OF COOK, LACY L. THOMAS, and
BRADLEY LANGER, M.D.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 281—**William J. Hibbler**, *Judge.*

ARGUED FEBRUARY 12, 2009—DECIDED JUNE 22, 2009

Before EASTERBROOK, *Chief Judge*, and FLAUM and
MANION, *Circuit Judges.*

MANION, *Circuit Judge.* Philip Bodenstab sued Cook
County and Cook County Hospital's Chief Operating
Officer, Lacy Thomas, and Medical Director,
Bradley Langer, after he was fired from his position as an
anesthesiologist at Cook County Hospital (now known as
Stroger Hospital). Bodenstab alleged he was fired in

violation of the Americans with Disabilities Act ("ADA"), and for exercising his First Amendment rights. Bodenstab also sought to overturn the state administrative decision upholding his firing and argued that the termination proceedings violated his due process rights. The defendants moved for summary judgment, arguing that they were justified in firing Bodenstab because he had threatened to kill his supervisor and co-workers. The district court granted the defendants summary judgment and Bodenstab appeals. We affirm.

## I.

Dr. Philip Bodenstab began working as an anesthesiologist at Cook County Hospital in Chicago, Illinois in 1993. On February 22, 2002, Bodenstab telephoned a friend, Jennifer Wengeler, who lived in Seattle, Washington. According to Wengeler, Bodenstab (who had recently been diagnosed with a cancerous lesion on his lip) told her that he was going to the Mayo Clinic and that if the cancer had metastasized, he was going to kill his supervisor, Dr. Winnie, and other co-workers. According to Wengeler, Bodenstab further stated that it was possible he might die in the ensuing gun battle with police. Wengeler stated that out of concern for the safety of Bodenstab and his co-workers, she contacted the Chicago Police and the Seattle FBI office.

The Chicago Police and the FBI started an investigation into the threats and alerted Cook County Hospital Medical Director (and defendant) Bradley Langer. They told Langer that the death threats were credible. Defendant Lacy

Thomas also reviewed the police reports, and later participated in the decision to fire Bodenstab.

Rather than firing Bodenstab immediately, the hospital administratively suspended Bodenstab, with pay, and directed him to make an appointment with a forensic psychiatrist for a fitness of duty evaluation. Bodenstab refused. Eventually, Bodenstab and the hospital agreed that he would obtain treatment at the Professional Renewal Center ("PRC") in Lawrence, Kansas. Bodenstab completed a five-day multi-disciplinary assessment at the PRC on August 24, 2002. The multi-disciplinary assessment concluded that Bodenstab suffered from paranoid and narcissistic personality features and occupational and interpersonal stressors. After the conclusion of the assessment, on August 26, 2002, Bodenstab elected to be admitted to the PRC's "Intensive Day Treatment Program" and he continued this treatment for approximately three months.

Upon Bodenstab's discharge from treatment in late November 2002, the PRC provided Cook County with a Treatment Discharge Summary. The Discharge Summary stated that Bodenstab was fit to return to practice, but not "to a work situation that is emotionally, politically, or interpersonally charged, as such an environment would likely strain his ability to work with others in a consensual and cooperative manner." The Discharge Summary also recommended that Bodenstab continue to be monitored by a psychiatrist and enter into a longer psychotherapy program, but it appears Bodenstab did neither.

After Bodenstab's discharge from the PRC, Cook County asked its psychiatrist, Dr. Deepak Kapoor, to interview Bodenstab. Kapoor was concerned that Bodenstab exhibited paranoia and interpersonally charged issues and Kapoor felt concerned for his own safety. On January 17, 2003, the hospital informed Bodenstab that it would hold a pre-disciplinary hearing concerning his behavior. The notice specified that Bodenstab had been accused of a major infraction—threatening to kill the department co-chairperson, Dr. Winnie, and four or five co-workers. Defendant Thomas presided over the pre-disciplinary hearing. Following the hearing, Thomas concluded that Bodenstab's conduct warranted discharge. Bodenstab appealed the decision to an independent Hearing Officer. The Hearing Officer affirmed the decision to terminate Bodenstab, stating that hospital management appropriately did not want to risk placing Bodenstab's co-workers in harm's way.

After he was fired, Bodenstab sued Cook County, Lacy Thomas, and Bradley Langer (hereinafter "Cook County"). He sought to overturn the administrative decision terminating him, and also alleged that his firing violated the First Amendment, the Americans with Disabilities Act, and his due process rights. The district court granted the defendants summary judgment and Bodenstab appeals.

## II.

On appeal, Bodenstab challenges the district court's grant of summary judgment on each of the claims he presented. We consider each claim in turn, "bearing in

mind that we review a district court's grant of summary judgment de novo and view the evidence in the light most favorable to the appellant." *Hancock v. Potter*, 531 F.3d 474, 478 (7th Cir. 2008).

### A.  ADA Claims

First we consider Bodenstab's ADA claims. Bodenstab presented several theories for recovery under the ADA, including disparate treatment, failure to accommodate, and retaliation. The district court granted Cook County summary judgment on each of these claims because, among other reasons, it concluded that Bodenstab "was not disabled within the meaning of the ADA."

The ADA prohibits discrimination against a "qualified individual with a disability." 42 U.S.C. § 12112(a). An individual has a "disability" within the meaning of the ADA if he has "a physical or mental impairment that substantially limits one or more major life activities . . .; a record of such an impairment; or [is] . . . regarded as having such an impairment." 42 U.S.C. § 12102(2).

Bodenstab does not claim that he has an actual impairment that substantially limits a major life activity, but rather argues that Cook County regarded him as having such an impairment, namely being impaired in the ability to interact with others. It is unclear whether "interacting with others" is, in itself, a "major life activity" within the meaning of the ADA. In *Emerson v. Northern States Power Co.*, 256 F.3d 506, 511 (7th Cir. 2001), the plaintiff had argued that her brain injury impaired her

in the major life activity of "interacting with others," but we noted that she offered "no legal precedent to support her assertion." Accordingly, we treated her impairment in "interacting with others" as a factor that fed "into the major life activities of learning and working." *Id.* In this case, though, Bodenstab claims interacting with others as the sole "major life activity," so there is nothing else into which this factor can feed. And since *Emerson* we have not further considered this issue.

However, we need not decide whether "interacting with others" qualifies as a "major life activity," or, if it does, whether Bodenstab was substantially limited in this activity. Even assuming *arguendo* that "interacting with others" is a "major life activity," and further assuming *arguendo* that Bodenstab was "substantially limited in this activity," as explained below, his ADA claims still fail for several reasons.[1]

Bodenstab's first claim is for disparate treatment. Bodenstab alleges that Cook County fired him because of his perceived disability and that its assertion that it fired him because of his alleged threats is pretextual. While the question of pretext arises only after a plaintiff has established a prima facie case of discrimination and the

---

[1] Bodenstab also argues in passing that he is disabled within the meaning of the ADA because he has a record of a disability, again in the major life activity of "interacting with others." This argument is undeveloped, but as noted, we need not resolve the issue because Bodenstab's ADA claims fail even assuming he is "a qualified individual with a disability."

employer has countered with a legitimate non-discrimina-tory reason for the adverse action, we can skip over the initial burden-shifting of the indirect method and focus on the question of pretext. *Rummery v. Illinois Bell Tel. Co.*, 250 F.3d 553, 556 (7th Cir. 2001) ("Like the district court, we will assume, without deciding, that [the plaintiff] established a prima facie case of discrimination.").[2]

---

[2] In arguing that he has established a prima facie case of disparate treatment, Bodenstab claims that Cook County punished him more severely for his misconduct than similarly situated employees who were not "disabled." For an individual to succeed on a discrimination claim based on alleged disparate treatment in discipline, the other individuals must be comparable "in all material respects." *Brummett v. Sinclair Broad. Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). This includes a showing that the employee held the same type of job, was disciplined by the same supervisor, was subject to the same standards, had comparable experience and qualifications, and engaged in the same conduct without differentiating or mitigating circumstances. *Id.* at 692-93. Discipline from a different supervisor "sheds no light" on the disciplinary decision. *Little v. Illinois Dep't of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004). In support of his position, Bodenstab points to several individuals who were disciplined (but not fired) for various conduct, such as fighting with other employees or bringing a handgun to the hospital. None of these other em-ployees' conduct, however, was comparable to Bodenstab's and none was supervised by the same individuals. Therefore, Bodenstab also did not present sufficient evidence that similarly situated individuals without a disability were treated more favorably.

"Pretext means a dishonest explanation, a lie rather than an oddity or an error." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 642 (7th Cir. 2008) (internal quotations omitted) "Showing pretext requires [p]roof that the defendant's explanation is unworthy of credence." *Filar v. Bd. of Educ. of City of Chicago.*, 526 F.3d 1054, 1063 (7th Cir. 2008) (internal quotations omitted).

In this case, Cook County presented evidence that it fired Bodenstab because he had threatened his co-workers. On appeal, Bodenstab spends a great deal of time downplaying his threats, characterizing them as "conditional syllogisms" and claiming Wengeler misinterpreted his comments. However, "to show pretext, [plaintiff] must show more than [defendant's] decision was mistaken, ill considered or foolish, [and] as long as [the employer] honestly believes those reasons, pretext has not been shown." *Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 823 (7th Cir. 2006)) (internal quotation omitted). Thus, "[o]ur only concern is with the honesty of [Cook County's] beliefs," and not with whether Bodenstab actually made the specific threats, as claimed by Wengeler. *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 726 (7th Cir. 2008).

Bodenstab does not present any evidence calling into question the sincerity of Cook County's belief that he had threatened to harm his co-workers and that it fired him for that reason. Rather, the undisputed evidence supports Cook County's belief that Bodenstab made these threats. Specifically, Cook County received an incident report from the Chicago Police Department that stated: "Jennifer Wengeler contacted [the police depart-

ment]. She stated that she had received a call on 22Feb02 from Bodenstab. He stated, in summary, that he was going to the Mayo Clinic for tests and if these tests turned out badly he was going to kill Dr. Alon Winnie and other staff members at Cook County Hospital." Cook County also received a Multi-Disciplinary Assessment Report from the PRC that also referred to Wengeler's statement that "Dr. Bodenstab indicated that if he were to find out that his cancer had spread, he had 'plans to kill' his former chief, Dr. Alon Winnie, and four to five of his physician coworkers." The Multi-Disciplinary Report then stated: "Dr. Bodenstab does not deny having a conversation with the informant that was thematically consistent with what is outlined above, but denies having any intent to actually carry out a murder-suicide." Moreover, Bodenstab admitted to telling Wengeler: "Well maybe I'll take some people with me if, if I have cancer, if I'm found to have metastases. Maybe, maybe it wouldn't be so bad being dead if you have metastases. They shoot horses don't they? If I have metastases, then maybe I would take some people with me."

In response, Bodenstab argues that because the Hearing Officer rejected Cook County's reliance on the threats as a basis for firing him, a jury could also find that reason pretextual. Bodenstab, however, misrepresents the Hearing Officer's decision. In affirming Cook County's decision to terminate Bodenstab, the Hearing Officer did not reject Cook County's conclusion that Bodenstab had threatened his co-workers; rather, the Hearing Officer did not reach the issue, ruling instead that he merely needed "to decide if Management could justify its conclu-

sion to discharge [Bodenstab]." The Hearing Officer then concluded that Cook County was justified in discharging Bodenstab because "[i]t would have been too risky to chance returning [Bodenstab] to his previous position as a Doctor of Anesthesiology at Stroger Hospital in view of the recommendations and observations made by PRC Staff." Thus, the Hearing Officer's decision does not support Bodenstab's claim of pretext.

Bodenstab also claims that he presented sufficient evidence of pretext, as well as circumstantial evidence of discrimination, by showing that Cook County failed to follow its own internal policies and by pointing to inconsistencies in various witnesses' testimony. Bodenstab, however, did not develop these arguments until his reply brief and thus has waived any such argument. *See United States v. Alhalabi,* 443 F.3d 605, 611 (7th Cir. 2006) (holding that arguments not fully developed until a reply brief are waived). In any event, the evidence Bodenstab identifies does not support a reasonable inference of discrimination. Nor does it counter the evidence Cook County presented that it fired Bodenstab for threatening (or because it reasonably believed he had threatened) his co-workers.

In addition to firing Bodenstab for threatening his co-workers, Cook County informed Bodenstab that it further believed he was a "direct threat to the health and safety of other individuals in the workplace" and thus was no longer qualified to work as an anesthesiologist at Cook County. Under the ADA, an individual is not qualified if he presents a "direct threat" to his own health and safety

or that of others. *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 78-79, 87 (2002). In this circuit, the employer has "the burden to show that an employee posed a direct threat to workplace safety that could not be eliminated by a reasonable accommodation." *Branham v. Snow*, 392 F.3d 896, 906 (7th Cir. 2004).

We need not decide, however, whether the undisputed evidence supports Cook County's conclusion that Bodenstab presented a direct threat to others. Even if Cook County could not satisfy its burden of establishing that Bodenstab presented a direct threat to the health and safety of others in the workplace, summary judgment was nonetheless appropriate because Cook County presented undisputed evidence that it fired Bodenstab for threatening his co-workers. As we explained in *Fischer v. Avanade, Inc.*, 519 F.3d 393, 403-04 (7th Cir. 2008), "when a defendant has offered multiple nondiscriminatory reasons for its hiring decision, showing that one of these reasons is pretextual is not enough . . . ." While *Fischer* noted that "there may be circumstances where 'multiple grounds offered by the defendant . . . are so intertwined, or the pretextual character of one of them so fishy and suspicious, that the plaintiff could withstand summary judgment,'" *id.* at 404 (internal quotation omitted), this case is not one of those rare circumstances. Rather, Bodenstab's challenge to the "direct threat" basis for his termination rests not on the pretext of that rationale, but on a claim that his condition did not present a direct threat. Thus, even if Cook County improperly determined that Bodenstab presented a "direct threat" within the meaning of the ADA, summary judgment on the termina-

tion claim was nonetheless appropriate because Cook County had a legitimate nondiscriminatory reason for firing Bodenstab—the threats he had already made (or that it reasonably believed he had made).

In addition to his disparate treatment claim, Bodenstab presented a failure to accommodate claim. That claim fails for the simple reason that, as explained above, the evidence established that Cook County fired Bodenstab because of his threats to harm co-workers. There is no legal obligation to "accommodate" conduct, as opposed to a disability, as we explained in *Spath v. Hayes Wheels Intern.-Indiana, Inc.*, 211 F.3d 392 (7th Cir. 2000). In *Spath*, the employer fired the plaintiff after he was injured while engaging in horseplay, and then when confronted with the facts, lied about the incident. The plaintiff sued his employer and argued with respect to his failure to accommodate claim "that his organic brain syndrome, mild mental retardation, and dependent personality disorder . . . caused him to deny involvement in the horseplay incident because he sometimes does not remember what he was doing or what he might have said in the past." *Id.* at 395 n.5. We explained that "[i]n essence, Spath is asking this Court to extend the ADA . . . to prevent an employer from terminating an employee who lies, just because the lying is allegedly connected to a disability." *Id.* We rejected this argument, noting that "the ADA does not require this." *Id. See also Jones v. Am. Postal Workers Union*, 192 F.3d 417, 429 (4th Cir. 1999) ("The law is well settled that the ADA is not violated when an employer discharges an individual based upon the employee's misconduct, even if the misconduct is related to

a disability."). Similarly, in this case, Cook County did not have an obligation to accommodate Bodenstab's threats, even if they were somehow related to a disability.

Bodenstab's final ADA claim is for retaliation; Bodenstab argues that he was fired for engaging in various protected activities. It is questionable whether the activities Bodenstab identifies—writing a letter to defendant Thomas asking to be reinstated, his complaints about being forced to undergo psychiatric examinations, and his identifying reasonable accommodations in his summary judgment memorandum—are protected activities. However, even assuming Bodenstab engaged in protected activities, he did not present sufficient evidence that the defendants fired him because he engaged those activities. Rather, the undisputed evidence shows that Cook County fired Bodenstab for threatening his co-workers. Thus, his retaliation claim also fails. *See, e.g., Jasmantas v. Subaru-Isuzu Automotive, Inc.*, 139 F.3d 1155, 1157 (7th Cir. 1998) (affirming grant of summary judgment to employer on plaintiff's retaliation claim where evidence showed employer fired plaintiff because it believed she had "been dishonest with the company about her injuries" and plaintiff's evidence did not indicate this reason was pretextual).

## B. First Amendment

Next, we consider Bodenstab's First Amendment claim. Bodenstab claims that he engaged in constitutionally protected speech and was fired in retaliation for engaging in that speech. Specifically, Bodenstab says that he

spoke out against, among other things, patient abandonment, ghost surgeries, lack of credentialed physicians, and physicians sleeping on duty. The district court granted Cook County summary judgment on Bodenstab's First Amendment claim, concluding that his speech was not constitutionally protected and was too remote in time from his termination to establish causation.

"To make out a prima facie case of first amendment retaliation, a public employee must present evidence that: (1) his speech was constitutionally protected, (2) he has suffered a deprivation likely to deter free speech, and (3) his speech was at least a motivating factor in the employer's action." *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006) (citations omitted). If the plaintiff can satisfy this burden, the defendant may avoid judgment by showing he "would have taken the same action even in the absence of [the plaintiff's] exercise of his First Amendment rights." *Samuelson v. LaPorte Cmty. Sch. Corp.*, 526 F.3d 1046, 1053 (7th Cir. 2008).

On appeal, Bodenstab initially argues that the district court erred in granting Cook County summary judgment on his First Amendment claim because Cook County did not seek summary judgment on this claim until its reply brief. As a result, Bodenstab argues that he was denied the opportunity to submit evidence showing he had engaged in protected speech and that there was a causal connection between his speech and his termination.

While it is true that before the district court Cook County did not support its argument for summary judgment on Bodenstab's First Amendment claim until its reply brief,

Cook County did move for summary judgment on all claims, including Bodenstab's § 1983 claim brought in Count II. In Count II, Bodenstab presented five distinct theories for recovery under § 1983, including his First Amendment claim. After Bodenstab pointed out in his response memorandum that his § 1983 claim presented multiple theories of recovery, including a First Amendment claim, Cook County addressed the propriety of summary judgment on the First Amendment claim in its reply brief. In doing so, Cook County did not present any new evidence. Rather, Cook County relied on the evidence Bodenstab submitted as part of the summary judgment proceedings, including an exhibit Bodenstab submitted which listed forty-one documents he claimed constituted protected speech.

On appeal, Bodenstab notes that the exhibit merely summarized the forty-one documents, and that had he known Cook County was seeking summary judgment on his First Amendment claim, he would have presented the actual documents. According to Bodenstab, the "form, content and level of distribution on the 'cc' list" of those documents would have established that he had engaged in protected First Amendment speech.

However, even assuming that Bodenstab succeeded in establishing that he engaged in constitutionally protected speech,[3] his First Amendment claim fails for the

---

[3] "Speech is constitutionally protected if (1) the employee spoke as a citizen on matters of public concern, and (2) the
(continued...)

same reason as his ADA claims: Cook County presented undisputed evidence that it fired Bodenstab because he threatened to kill his co-workers. Bodenstab has not presented any evidence calling into question the veracity of Cook County's rationale for his termination. Although Bodenstab might not have had notice that his First Amendment claim was under summary judgment consideration, he clearly knew that Cook County was relying on his threats as the basis for his termination. In the context of his ADA claim, Bodenstab had more than ample opportunity to present evidence that that was not the real reason Cook County fired him, but he failed to do so. Because the same legitimate non-discriminatory reason defeats any First Amendment claim, the district court did not err in granting the defendants summary judgment on that claim as well. *See Golden Years Homestead, Inc. v. Buckland*, 557 F.3d 457, 462 (7th Cir. 2009) (upholding a grant of summary judgment where the

---

[3] (...continued)

interest of the employee as a citizen in commenting upon matters of public concern outweighs the interest of the State as an employer in promoting the efficiency of the public services it performs through its employees." *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 509 (7th Cir. 2007). As the Supreme Court explained in *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006), "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."

evidence relating to the defendant's possible retaliatory motive was the same for the state law claims not addressed as the federal constitutional claims which were addressed); *Acequia, Inc. v. Prudential Ins. Co. of Am.*, 226 F.3d 798, 807 (7th Cir. 2000) (upholding grant of summary judgment where the losing party had notice of the basis for the motion for summary judgment on one claim and that same basis doomed the remaining seven claims). Moreover, on appeal Bodenstab had every opportunity to address the issue of causation in the context of the First Amendment claim and he did not identify any additional evidence which would help his case. "[A] *sua sponte* judgment may be affirmed if the complaining party cannot show on appeal that it was deprived of the opportunity to present a viable claim," *Tranzact Tech., Ltd. v. Evergreen Partners, Ltd.*, 366 F.3d 542, 549 (7th Cir. 2004), as there is "no reason to remand the case because [the plaintiff] was given a full opportunity to make its argument on appeal." *S. Ill. Riverboat Casino Cruises, Inc. v. Triangle Insulation & Sheet Metal Co.*, 302 F.3d 667, 678 (7th Cir. 2002). *See also Buckland*, 557 F.3d at 462 (upholding a grant of summary judgment even though the defendant did not specifically address state law claims in its opening motion for summary judgment because the plaintiff did not identify any significant evidence that it omitted).

## C.  Common Law Certiorari

Bodenstab's next claim is a supplemental state law claim for common law *certiorari*. Under Illinois law,

"[w]here the Administrative Review Law has not been expressly adopted, the writ of common law *certiorari* survives as an available method of reviewing the actions of agencies and tribunals exercising administrative functions." *Stratton v. Wenona Community Unit Dist. No. 1*, 551 N.E.2d 640, 645 (Ill. 1990). As the Illinois Supreme Court explained, "[t]he common law writ of *certiorari* was developed to provide a means whereby a petitioner who was without avenue of appeal or direct review could obtain limited review over action by a court or other tribunal exercising quasi-judicial functions." *Id.* Thus, "where a final administrative decision has been rendered," such as the one affirming Bodenstab's firing, a court may review that decision. *Id.* 645-46.

In reviewing an administrative decision, the question "under common law *certiorari*, as in statutory *certiorari* proceedings, is whether the record contains any evidence which fairly tends to support the agency's findings." *Maddox v. Williamson Cnt. Bd. of Comm'rs*, 475 N.E.2d 1349, 1354 (Ill. App. Ct. 1985). Courts may "not reweigh the evidence and may set aside the agency's findings only if they are palpably or manifestly against the weight of the evidence." *Id.* In reviewing an agency's decision to discharge an employee, we "further ask whether the agency's findings of fact [were] sufficient to warrant discharge under the applicable standard of conduct. *Id.* A "discharge will be overturned where found to be arbitrary and unreasonable." *Id.* "Simply put, if there is evidence of record that supports the agency's determina-

tion, it must be affirmed."[4]  *Kimball Dawson, LLC v. City of Chicago Dept. of Zoning*, 861 N.E.2d 216, 222 (Ill. App. Ct. 2006).

In this case, the Hearing Officer who reviewed Bodenstab's discharge found that "[i]t would have been too risky to chance returning [Bodenstab] to his previous position as a Doctor of Anesthesiology at Stroger Hospital in view of the recommendations and observations made by PRC Staff." The Hearing Officer further concluded that "[m]anagement could not place [Bodenstab] in a situation which could have resulted in the disruption of operations at Stroger Hospital and/or place his co-workers in harm's way." Based on these factual findings, the Hearing Officer concluded that Cook County was justified in discharging Bodenstab.

As noted above, we may not reweigh the evidence or set aside the Hearing Officer's findings of fact unless they were "palpably or manifestly against the weight of the evidence." *Maddox*, 475 N.E.2d at 1354. In this case, the evidence supported the Hearing Officer's findings of fact. As the Hearing Officer noted, the PRC concluded that Bodenstab could not work safely in an "emotionally, politically, or interpersonally charged environment." The

---

[4] The parties dispute whether under Illinois law, the administrative findings of "cause" are considered "*prima facie* true and correct." We need not delve into this question of state law because, as discussed below, Bodenstab's common law *certiorari* claim fails whether or not we consider the agency's determination of cause *prima facie* true.

Hearing Officer also heard testimony concerning Bodenstab's time at Cook County and this testimony further supported the Hearing Officer's conclusion that it was "too risky" to return Bodenstab to his position as a Doctor of Anesthesiology.

The Hearing Officer likewise did not err in concluding that Cook County was justified in terminating Bodenstab based on these facts. In Illinois, "'cause' has been judicially defined as some substantial shortcoming which renders the employee's continuance in his office or employment in some way detrimental to the discipline and efficiency of the service." *Davis v. City of Evanston*, 629 N.E.2d 125, 132 (Ill. App. Ct. 1993) (internal citations omitted). Bodenstab's inability to work safely in an "emotionally, politically, or interpersonally charged environment" qualifies as a substantial shortcoming, rendering his continuance as an anesthesiologist detrimental to the discipline and efficiency of service. Accordingly, we affirm the Hearing Officer's decision upholding Bodenstab's termination.

Bodenstab also challenges the Hearing Officer's decision by arguing that in reviewing his termination, the Hearing Officer should have applied the rules set forth in the Medical Staff Bylaws, as opposed to the Rules and Regulations Governing Employee Conduct. The Hearing Officer rejected this argument, concluding that the Medical Staff Bylaws governed medical staff membership and clinical privileges at Cook County health facilities and not disciplinary actions, whereas disciplinary actions were governed by the Hospital Rules

and Regulations Governing Employee Conduct. Because in this case Cook County sought to terminate Bodenstab based on the "just cause" provisions contained in the Hospital Rules and Regulations, the Hearing Officer's decision to apply those rules was supported by the evidence.

Bodenstab further argues that the Hearing Officer erred in upholding his firing because County Board President John H. Stroger did not approve his discharge, as he claims was required by County policy. The record evidence, however, does not support Bodenstab's claim that Stroger had not approved of his termination. Bodenstab bore the burden of proof, and thus to avoid summary judgment needed to present such evidence. He did not do so, and accordingly this argument fails as well.[5]

### D.  Due Process Claims

Finally, Bodenstab argues that the district court erred in granting the defendants summary judgment on his due process claims. The Supreme Court in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542 (1985), held that

---

[5] In his reply brief, Bodenstab also asserts that the Hearing Officer improperly upheld his discharge based on off-duty conduct. By not making this argument until his reply brief, it is waived. *Alhalabi*, 443 F.3d at 611. In any event, we agree with the Hearing Officer that the fact that Bodenstab made the threats while off duty is irrelevant, as they clearly affected his ability to practice medicine safely while on duty.

due process "requires some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment." (internal quotations omitted). Under *Loudermill*, "when adequate post-termination proceedings exist, a pretermination hearing need only provide 'an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.'" *Michalowicz v. Village of Bedford Park*, 528 F.3d 530, 536-37 (7th Cir. 2008) (quoting *Loudermill*, 470 U.S. at 545-46).

In this case, prior to his termination, Cook County provided Bodenstab with a pre-termination hearing. Cook County notified him by letter dated January 17, 2003, that this hearing would take place on February 20, 2003, "to discuss the charges set forth below." The letter then stated that Bodenstab had "committed a major cause infraction by threatening to kill [his] former Department Chairperson and four to five of [his] co-workers." Cook County also provided a summary of the grounds supporting this charge, noting the reports it had received from the Chicago Police Department and the FBI, and stated that "[i]f the above charges are supported by sufficient facts, you may be disciplined up to and including discharge." The letter also summarized Bodenstab's treatment at the PRC and the Multi-Disciplinary Assessment Diagnostic Report, as well as the PRC Report's statement that Bodenstab should not return "to a work situation that is emotionally, politically, or interpersonally charged as such an environment would likely strain his

ability to work with others in a consensual and cooperative manner." The letter then concluded that "[g]iven the serious nature of your threats against the lives of your co-workers and in consideration of . . . the report from the Professional Renewal Center . . . the County believes that you pose a direct threat to the health and safety of other individuals in the workplace." The noticed pre-termination hearing was eventually held on May 12, 2003. (Bodenstab had requested various delays from the original February 20, 2003, hearing date.) At the pre-termination hearing Bodenstab had the opportunity to respond to the charges set forth in the January 17, 2003 letter.

For a pre-termination hearing to comply with due process requirements the employee must receive: (1) oral or written notice of the charges; (2) an explanation of the employer's evidence; and (3) an opportunity to tell his side of the story. *Staples v. City of Milwaukee*, 142 F.3d 383, 385 (7th Cir. 1998). The notice and pre-termination hearing Bodenstab received more than complied with the mandates of the due process clause.

Following the pre-termination hearing, Bodenstab appealed his termination and received another hearing. At that hearing, Bodenstab again had the opportunity to present his side of the story and respond to the allegations stated in the January 17, 2003 letter. As explained above, following that hearing, the Hearing Officer concluded that Cook County properly terminated Bodenstab because it was "too risky" to return Bodenstab to his position as a Doctor of Anesthesiology.

In response, Bodenstab argues he was denied adequate pre- and post-termination hearings because he was

notified that he was being discharged for a "major cause infraction" (his alleged threats), but was then terminated for a different reason (his inability to work safely as an anaesthesiologist at Cook County Hospital). However, the January 17, 2003, letter was not so limited; rather, that letter also specifically referred to and explained the basis for Cook County's conclusion that Bodenstab could not be retained as an anaesthesiologist because he was a direct threat to the health and safety of others. At the final hearing, Bodenstab had the opportunity to present evidence and arguments concerning the PRC Reports and his ability to function safely at Cook County Hospital. Thus, he had more than sufficient notice and an opportunity to be heard on the grounds on which the final Hearing Officer affirmed his termination. For these reasons, Bodenstab's due process claims fail.

**III.**

Cook County presented undisputed evidence that it fired Bodenstab because he threatened to kill his co-workers. Bodenstab did not present sufficient evidence of pretext to avoid summary judgment on Cook County's ADA claims. These threats likewise doomed Bodenstab's First Amendment retaliation claim. Additionally, the Hearing Officer's decision affirming Bodenstab's termination was proper and thus Bodenstab's common law *certiorari* claim likewise fails. Finally, Bodenstab's due process claims fail because Cook County provided him with constitutionally sufficient notice and an opportunity to be heard. Accordingly, the district court properly

granted Cook County summary judgment. For these and the foregoing reasons, we AFFIRM.