**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MICHAEL P. CURLEY,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>CITY OF NORTH LAS VEGAS,<br>*Defendant-Appellee.* | No. 12-16228<br><br>D.C. No.<br>2:09-cv-01071-KJD-VCF<br><br>OPINION |

Appeal from the United States District Court
for the District of Nevada
Kent J. Dawson, District Judge, Presiding

Argued and Submitted
September 10, 2014—San Francisco, California

Filed December 2, 2014

Before: Mary M. Schroeder, John B. Owens,
and Michelle T. Friedland, Circuit Judges.

Opinion by Judge Friedland

## SUMMARY[*]

### Americans with Disabilities Act

The panel affirmed the district court's summary judgment in an action   alleging employment discrimination and retaliation in violation of the Americans  with Disabilities Act.

The plaintiff alleged that the City of Las Vegas discriminated against him by firing  him because of his hearing impairment and retaliated against him for filing an EEOC complaint and requesting an accommodation. The panel held that the plaintiff failed to establish a genuine issue of material fact as to whether the City's stated reason for firing him—his long history of threatening coworkers—was pretextual.

### COUNSEL

Michael P. Balaban (argued), Law Offices of Michael P. Balaban, Las Vegas, Nevada, for Plaintiff-Appellant.

Sandra Douglass Morgan (argued) and Jeffrey F. Barr, City Attorneys, North Las Vegas, Nevada, for Defendant-Appellee.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

**OPINION**

FRIEDLAND, Circuit Judge:

Michael Curley appeals the district court's grant of summary judgment in favor of the City of North Las Vegas on his claims alleging discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"). First, we consider whether a doctor's finding that Curley did not pose a safety threat belies one of the City's stated reasons for firing him—his long history of threatening coworkers. Second, we consider whether the City's prior leniency toward Curley's misconduct provides reason to doubt that the City fired him partly because of that misconduct. We conclude that neither provides a basis for finding the City's explanations pretextual, so we affirm the district court's grant of summary judgment.

## I. Background

Michael Curley was an employee of the City of North Las Vegas from 1996 until 2009. In 2005, Curley became a pretreatment inspector—a position that primarily entailed cleaning sewers and preventing sewer blockages.

Curley received many oral and written reprimands during his employment with the City. His disciplinary record reflects that, over the course of several years, Curley had numerous verbal altercations with coworkers, made insensitive remarks about a fellow employee's motorcycle accident, damaged City property, and made several threats of violence against coworkers. Curley's disciplinary record also includes statements by coworkers regarding his constant

complaints and negative remarks about his managers and the City.

In December 2008, Curley filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").[1] The charge alleged that the City had denied Curley's request for accommodation of a hearing impairment. The charge also alleged that the City was retaliating against him for having filed a prior charge of retaliation and race and age discrimination.

In January 2009, Curley made a second request that the City provide him an accommodation for a hearing impairment. In his request, he complained that the noise from one of the trucks he operated was causing his hearing to deteriorate. Curley asked to be relieved from all duties that required him to be near that type of truck. Because those duties were essential to his position, the City rejected his request and instead recommended that he use dual hearing protection.

Shortly after his correspondence with the City regarding his second request for accommodation, Curley was involved in another incident with a coworker. The coworker asked Curley to remove his hearing protection so that the two of them could communicate about a work-related task. In response, Curley began swearing and asking the coworker whether he thought he was a doctor. The incident prompted the City to place Curley on administrative leave and to launch an investigation into his behavior.

---

[1] Curley also filed this charge with the Nevada Equal Rights Commission. For simplicity, we will refer to the NERC and the EEOC collectively as the EEOC.

As part of the investigation, the Human Resources Department interviewed City employees and asked about their interactions with Curley. The interviews revealed that Curley had repeatedly threatened his coworkers and their families. For example, he threatened to put a bomb under a car, insinuated that he had mafia connections, and talked about giving a "blanket party"—which would involve throwing a blanket over a person's head and beating him. One coworker reported that Curley threatened to kick his teeth out if the coworker did not join a union. On another occasion, Curley threatened to shoot his supervisor's children in the kneecaps.

The interviews also revealed details about Curley's work habits. Multiple coworkers said that Curley regularly conducted personal business while at work, sometimes spending up to three hours on his cell phone. It also appears that Curley was operating an ADA consulting business. Many of the calls he made during work were about the business, and coworkers saw him approach disabled individuals to discuss potential lawsuits.

Finally, the City scheduled Curley for a fit-for-duty evaluation as part of the investigation. The evaluation assessed only whether Curley could return to work and whether he was a danger to himself or others. The doctor who conducted the evaluation determined that Curley was fit for duty and was not a danger to himself or others.

At the conclusion of the investigation, Human Resources recommended that the City conduct a hearing to determine how to discipline Curley. After the hearing, the City decided to fire him. A memorandum explaining the termination included the following charges: nonperformance of duties due

to excessive phone calls, intimidation of coworkers by threats of violence, conducting and soliciting personal business on work time, and making disparaging remarks about his supervisors and the City.

Shortly after his termination, Curley filed a charge with the EEOC alleging discrimination and retaliation under the ADA. Curley received a right-to-sue notice and filed suit in state court in Nevada. The City removed the case to the United States District Court for the District of Nevada, which granted the City's motion for summary judgment. Curley appealed.

## II. Standard of Review

A district court's grant of summary judgment is reviewed de novo. *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 954 (9th Cir. 2013). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the substantive law. *Id.* We may affirm a grant of summary judgment on any ground supported by the record, even one not relied upon by the district court. *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1009 n.4 (9th Cir. 2007).

## III. Discussion

The ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). In addition, the ADA prohibits retaliating against an employee who engages in certain protected activities. *See id.* § 12203(a). Curley argues that the City discriminated against him by firing him because of

his hearing impairment.  He also contends that the City fired him in retaliation for his filing an EEOC complaint and requesting an accommodation.

Discrimination and retaliation claims under the ADA are both subject to the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).  *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 49–50 & n.3 (2003); *Brown v. City of Tucson*, 336 F.3d 1181, 1186–87 (9th Cir. 2003); *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001).  Under that framework, an employee challenging an adverse employment action has the initial burden of establishing a prima facie case of discrimination (or retaliation).  The burden then shifts to the employer to provide a legitimate, nondiscriminatory (or nonretaliatory) reason for the adverse employment action.  If the employer does so, then the burden shifts back to the employee to prove that the reason given by the employer was pretextual.  *See Raytheon*, 540 U.S. at 49–52 & n.3; *Brown*, 336 F.3d at 1187; *Snead*, 237 F.3d at 1093.

## A. Discrimination

We need not decide whether Curley can establish a prima facie case of discrimination, because, even if he could, he has not raised a genuine issue of material fact as to whether the City's reasons for terminating him were pretextual.  Curley concedes that, assuming he could establish a prima facie case, the City has carried its burden of providing legitimate, nondiscriminatory reasons for firing him.  The City gave four reasons for Curley's termination: nonperformance of duties due to excessive phone calls, intimidation of coworkers by threats of violence, conducting and soliciting personal business on work time, and making disparaging remarks

about his supervisors and the City. Curley has failed to offer any basis for believing those reasons were pretext for discrimination.

Curley tries to show pretext by pointing to the results of his fit-for-duty evaluation. The doctor who performed that evaluation determined that Curley was fit for duty and not a danger to himself or others. Curley contends that the City's decision to fire him despite the conclusions of the evaluation creates a genuine issue of material fact as to the credibility of the City's stated reasons for firing him.

Curley's argument fails for two reasons. First, the City explained that it fired Curley because of the threats he had made in the past, not the danger of future violence. The Seventh Circuit addressed an analogous situation in *Bodenstab v. County of Cook*, 569 F.3d 651 (7th Cir. 2009). In that case, the employer fired the plaintiff for making threats and informed him that it believed he was a direct threat to the health and safety of his coworkers. *Id.* at 658. The court determined that it did not need to decide whether the plaintiff actually posed a "direct threat" as defined by the ADA. *Id.*[2] The Seventh Circuit held that, even if the plaintiff was not a direct threat, summary judgment was appropriate because the employer "had a legitimate nondiscriminatory reason for firing [him]—the threats he had already made." *Id.* at 659. In other words, the plaintiff's threats were an independent and sufficient basis for dismissal, regardless of whether he posed an actual danger.

---

[2] Under the ADA, it is a defense against a charge of discrimination that the employee was a "direct threat to the health or safety of other individuals in the workplace." 42 U.S.C. § 12113(a)–(b).

Like the plaintiff in *Bodenstab*, Curley was fired for threats he had already made. The City's notice of termination specifically relied on Curley's history of intimidating coworkers. Nothing in the fit-for-duty evaluation addressed that history. Thus, even if the City had Curley evaluated to determine whether he posed a danger to other employees, the City represented that it fired him for past threats, not for the potential of future violence. Curley presented no evidence that the City's reliance on past threats was actually pretext for discrimination.

Second, even if the fit-for-duty evaluation somehow undermined the credibility of the City's stated concern about Curley's threats, the City put forward other reasons for terminating him: nonperformance of duties, conducting personal business at work, and making disparaging remarks about his supervisors and the City. Curley does not even try to refute these reasons. Disputing only one of several well-supported, independently sufficient reasons for termination is generally not enough to defeat summary judgment. *See Cotton v. City of Alameda*, 812 F.2d 1245, 1248 (9th Cir. 1987) ("We must consider whether a genuine issue exists with respect to the credibility of each of the employer's proffered explanations."); *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1309 (10th Cir. 2005) (per curiam) ("[A]s a general rule, an employee must proffer evidence that shows each of the employer's justifications are pretextual." (alteration in original) (internal quotation marks omitted)). There is no reason to depart from that rule here.[3]

---

[3] A plaintiff's attack on an employer's legitimate, nondiscriminatory reasons may sometimes defeat summary judgment without discrediting all of the employer's stated reasons. For example, this could be true when:

## B. Retaliation

As with his discrimination claim, we need not decide whether Curley established a prima facie case of retaliation because he cannot show pretext. Curley argues that, because the City tolerated his bad behavior for years before his recent protected activity (filing an EEOC claim and making an accommodation request), his termination must be retaliatory. But Curley wrongly assumes that the City was aware of the severity and scope of his misconduct during the years in which it refrained from terminating him. In fact, after his protected activity, Curley instigated yet another altercation

---

(1) the reasons are so intertwined that a showing of pretext as to one raises a genuine question whether the remaining reason is valid, *see* [*Russell v. Acme-Evans Co.*, 51 F.3d 64, 70 (7th Cir. 1995)]; (2) the pretextual character of one explanation is "so fishy and suspicious," *id.*, that a jury could "find that the employer (or its decisionmaker) lacks all credibility," *Chapman v. AI Transport*, 229 F.3d 1012, 1050 (11th Cir. 2000) (en banc) (Birch, J., concurring and dissenting); (3) the employer offers a plethora of reasons, and the plaintiff raises substantial doubt about a number of them, [*Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 814 (10th Cir. 2000)]; (4) the plaintiff discredits each of the employer's objective explanations, leaving only subjective reasons to justify its decision, *see Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1298–99 (D.C. Cir. 1998) (en banc); or (5) the employer has changed its explanation under circumstances that suggest dishonesty or bad faith, *Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1380–81 (10th Cir. 1994).

*Jaramillo*, 427 F.3d at 1310 (bracketed citations replacing short form citations). No circumstances like these are present here.

with a coworker, which prompted the City to investigate his behavior. This investigation revealed the full extent of his misconduct, including several additional, independently sufficient bases for firing him. Curley does not contest these additional bases. Given this, the City's failure to fire Curley sooner does not constitute evidence from which a jury could find that the stated reasons for firing Curley were pretextual.

Curley also argues that the fact that the City fired him within two months of his protected activity is itself evidence of pretext. It is true that very close temporal proximity between a protected activity and an adverse employment action can be sufficient evidence of a causal link between the two to support a prima facie showing of retaliation. *See Brown*, 336 F.3d at 1187. But the new information revealed by the City's investigation defeats any causal inference that might otherwise follow from the temporal proximity between his protected activity and his termination. The timing here therefore does nothing to refute the City's legitimate explanations for the adverse employment action, making summary judgment appropriate even if Curley has established a prima facie case. *See Hashimoto v. Dalton*, 118 F.3d 671, 680–81 (9th Cir. 1997) (holding that, although "the timing of the[] events suffice[d] to establish a minimal prima facie case of retaliation, it d[id] nothing to refute" the employer's stated legitimate reasons for disciplining the plaintiff).

## IV. Conclusion

For the foregoing reasons, we AFFIRM the district court's order granting summary judgment for the City.

**AFFIRMED.**