NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUL 20 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| WAYNE R. BLACK, | No. 19-35625 |
| Plaintiff-Appellant, | D.C. No. 2:17-cv-00365-RMP |
| v. | |
| GRANT COUNTY PUBLIC UTILITY DISTRICT, a Statutory Nonprofit Corporation, | MEMORANDUM[*] |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Eastern District of Washington
Rosanna Malouf Peterson, District Judge, Presiding

Submitted July 6, 2020[**]
Seattle, Washington

Before: NGUYEN and BUMATAY, Circuit Judges, and SIMON,[***] District Judge.

Partial Concurrence and Partial Dissent by Judge BUMATAY

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable Michael H. Simon, United States District Judge for the District of Oregon, sitting by designation.

Wayne Black, a former employee of the Grant County Public Utility District ("PUD"), appeals the district court's order granting summary judgment to the PUD on his claims for unlawful discrimination and retaliation pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Washington Law Against Discrimination ("WLAD"), Wash. Rev. Code § 49.60. We have jurisdiction pursuant to 28 U.S.C. § 1291. Reviewing the district court's decision de novo, we affirm the grant of summary judgment as to Black's discrimination claims and reverse as to his retaliation claims. *See Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 832 (9th Cir. 2002) (setting forth standard of review).

1. The district court properly granted summary judgment to the PUD on Black's claims for unlawful discrimination on the basis of his age and religion. Black failed to meet his burden to show pretext at the third step of the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and that failure is fatal to his claims irrespective of whether he made out a prima facie case for discrimination.[1] Black's discipline-related discrimination claims hinge on his use of comparators, but his proffered comparators have

---

[1] Black does not dispute that the PUD proffered legitimate, non-discriminatory reasons for the challenged employment actions that are sufficient to meet its burden at step two of the *McDonnell Douglas* test.

2

minimal probative value because they are not "similarly situated [to him] . . . in all material respects." *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006); *see also Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003), *as amended* (Jan. 2, 2004) (explaining that "individuals are similarly situated when they have similar jobs and display similar conduct"). Black's promotion-related discrimination claims rely on weak circumstantial evidence, amounting to little more than his membership in a protected class, his rejection for positions for which he had basic qualifications, and the offering of the positions to employees outside the protected class. This showing is insufficient to satisfy Black's burden. *See Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1113 (9th Cir. 2011) (explaining that "specific" and "substantial" circumstantial evidence of pretext is required to avoid summary judgment in the employer's favor).

Moreover, the remaining evidence in the record undercuts any inference of discrimination. When Black was hired, he was already 47 years old; Black was promoted once at age 54 and again at age 55; and Black acknowledges that the PUD treated him fairly and non-discriminatorily during the eleven-plus years of his employment from 2005 to July 2016 as he aged from 47 to 58. In addition, Black generally kept his religion to himself and "never, ever mentioned [his faith] unless someone asked"—and "[n]o one ever really asked." Black provides no evidence, apart from bare conjecture, that any PUD decisionmaker even knew he was a

3

member of the Church of Jesus Christ of Latter-day Saints until he brought this lawsuit. And, as Black testified, none of the PUD decisionmakers ever said or did anything to Black in his presence that showed bias against him based on his age or religion. On this record, we agree with the district court that summary judgment was warranted.

2. The district court erred in granting summary judgment to the PUD on Black's retaliation claims. Applying the *McDonnell Douglas* burden-shifting framework, we conclude that Black met his burden to make out a prima facie case of retaliation and to show that the PUD's proffered reason for terminating him was pretextual. Therefore, his retaliation claims should survive summary judgment.

As an initial matter, Black made out a prima facie case of retaliation. First, Black engaged in a protected activity when he filed this lawsuit alleging age- and religion-based discrimination. *See Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065–66 (9th Cir. 2003), *as amended* (Jan. 6, 2004) (reciting elements of a prima facie case of retaliation). Second, he suffered an adverse employment action when he was fired by the PUD. *See id.* Third, he proffered sufficient evidence of a causal link between his protected activity and the PUD's employment decision. *See id.* While not conclusive on its own, the timeline of Black's termination supports an inference of causation. Following more than thirteen years of steady employment with the PUD, Black lost his job about eight months after bringing

4

this lawsuit.[2]  The evidence also indicates that the relevant decisionmakers were aware of Black's protected activity at the relevant times.  In addition, the allegations on which the PUD based its discharge decision were not new at the time of the PUD's investigation, but rather resurfaced years after the underlying activity, during interviews conducted for the purpose of this litigation.  The same two employees who reported timekeeping misconduct in these litigation-related interviews had reported the same or similar allegations to an appropriate authority within the PUD years prior, yet no formal investigation or discipline followed those initial allegations.  It was not until Black's discrimination lawsuit was underway, and the allegations remerged in that context, that the PUD opted to take formal action.  This circumstantial evidence, viewed in the aggregate, is more than sufficient to state a prima facie case for unlawful retaliation.

The PUD proffered legitimate reasons for Black's termination, but Black furnished sufficient evidence supportive of a finding of pretext to survive summary judgment.  This evidence includes: (1) the temporal proximity of Black's protected activity and his discharge; (2) the fact that the allegations against him resurfaced during employee interviews conducted for the purpose of this litigation; (3) the fact that the same or similar allegations had been made years earlier by the same

---

[2]  The precipitating investigation, of course, began even closer to the lawsuit's filing.

5

employees, but no formal investigation or disciplinary action resulted; and (4) the knowledge of the relevant decisionmakers that Black had engaged in the protected activity.[3] We conclude that Black presented sufficient "specific" and "substantial" evidence of pretext as to his retaliation claims. *See id.* at 1066. As we have repeatedly stated, "a plaintiff's burden to raise a triable issue of pretext is 'hardly an onerous one.'" *Earl*, 658 F.3d at 1113 (quoting *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1170 (9th Cir. 2007)).

The dissent's disagreement as to the federal retaliation claim is based on an unduly constrained reading of but-for causation. The dissent would require Black to prove that his protected activity, and not the PUD's proffered reason, "was *the* 'but-for' cause of [his] termination." However, that framing of the issue flouts the well-accepted principle that "[o]ften, events have multiple but-for causes," and therefore, "the adoption of the traditional but-for causation standard means a defendant cannot avoid liability just by citing some other factor that contributed to its challenged employment decision." *Bostock v. Clayton County*, 140 S. Ct. 1731, 1739 (2020). To satisfy this "traditional" standard, Black need only show that his

---

[3] We also view the disparity in punishment between Black and those on his crew who committed time sheet violations as offering some support for a finding of pretext, but our holding does not hinge on that evidence. This includes one crewmember who not only was offered discipline in lieu of termination, but also later received lenient treatment despite a violation of his so-called "Last Chance Agreement" for yet another timekeeping violation.

protected activity "was *one* but-for cause of that decision." *Id.* (emphasis added).

The dissent also errs in reviewing each piece of evidence in isolation. For example, the dissent notes that the eight-month gap between Black's protected activity and his termination is too long to conclusively demonstrate causation. We agree.[4] However, the dissent then opts to reject entirely Black's timing argument, and it proceeds to evaluate the purportedly "lone remaining allegation" in isolation. But it is Black's *collection* of evidence, viewed holistically, that supports an inference of causation.

The dissent also seems to give the PUD the benefit of the doubt at each turn, rather than draw all inferences in Black's favor, as we must on summary judgment. *See S.R. Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019). The same two PUD employees made the same or very similar allegations of timekeeping fraud against Black years before—and no action was taken. Yet when the allegations resurfaced not long after Black's protected activity, the PUD launched a comprehensive investigation and terminated Black. The dissent concludes that the result of the investigation rebuts any inference of retaliation, but that ignores the

---

[4] We emphasize that the cases cited in the dissent support only this narrower proposition, i.e., that the eight-month period is too long to constitute dispositive evidence, on its own, of causation. They do not support the dissent's broader proposition that the eight-month period is so long that we should (or can) altogether ignore it as evidence supportive of causation.

PUD's disparate responses before and after Black's protected activity.[5] The PUD's initial failure to investigate the same allegations bolsters the inference that Black was treated differently after engaging in the protected activity.

We do not question an employer's right to terminate an employee for wrongdoing, or to use the evidence that emerges during discovery in its employment decisions. But the question here is whether the PUD retaliatorily pursued discharge of an employee exercising his rights under discrimination law, even if the discharge is supported by an otherwise-legitimate rationale. Faced with two competing narratives, each supported by evidence, we conclude that summary judgment was not appropriate on Black's retaliation claims.

Each party shall bear its own costs.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

[5] The dissent cites *Curley v. City of North Las Vegas*, 772 F.3d 629 (9th Cir. 2014), which is inapposite. In *Curley*, the terminated employee "instigated yet another altercation with a coworker" *after* his protected activity, and it was that *subsequent* altercation that "prompted the [employer] to investigate his behavior." 772 F.3d at 633–34. Here, by contrast, no new conduct by Black (apart from his protected activity) spurred the PUD's investigation. And viewing the evidence in the light most favorable to Black, the resurfaced allegations were not materially different from those made against him years prior.

BUMATAY, Circuit Judge, concurring in part and dissenting in part:

FILED

JUL 20 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

These are the undisputed facts: after being denied a promotion or lateral transfer, Wayne Black sued his employer, Grant County Public Utilities District ("PUD"), for unlawful discrimination. During discovery interviews conducted by PUD for Black's lawsuit, multiple accusations emerged that several years earlier, Black had falsified timesheets and told his subordinates to do the same. Although Black denied the allegations, PUD investigated and determined that they were substantiated by falsified time records and the testimony of no less than six former members of Black's crew. PUD calculated that Black had either personally stolen or convinced his employees to steal hundreds of hours of taxpayer-funded overtime. PUD then fired Black. In return, Black accused PUD of unlawful retaliation.

To win on a Title VII retaliation claim, employees must show that their engagement in protected activity—and not the employer's stated rationale—was the "but-for" cause of their termination. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). But-for causation is a heightened standard, requiring a substantial showing from the employee to demonstrate pretext. *See Acosta v. Brain*, 910 F.3d 502, 514 (9th Cir. 2018) (finding that but-for causation is a "higher" standard than substantial or motivating factor causation). This causation standard "requires proof that the harm would not have occurred in the absence of—that is, but for—the

1

defendant's conduct." *Burrage v. United States*, 571 U.S. 204, 211 (2014) (simplified). In other words, the employee's protected action must be "the straw that broke the camel's back." *Id.* at 211.

Given the facts here, no reasonable juror could conclude that the but-for cause—i.e., the back-breaking straw—of Black's termination was anything but his fraudulent conduct. While conducting discovery for Black's lawsuit, PUD uncovered extensive evidence that he spearheaded a scheme to inflate his and other crewmembers' overtime, potentially stealing over hundreds of hours of taxpayer-funded overtime. PUD then spent 200–300 employee hours conducting a thorough investigation, which confirmed its suspicions. Faced with the magnitude of Black's fraudulent conduct, PUD decided to terminate his employment.

Against the mountain of proof amassed by PUD that his serious misconduct led to his termination, Black offers only the barest shreds of evidence that this rationale was pretextual. First, Black claims that he was fired shortly after he filed his lawsuit, suggesting that this indicates causation. Problematically for Black, the actual timing of his termination in relation to his lawsuit—*eight months* later—falls well beyond the range we ordinarily recognize. *See, e.g.*, *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citing cases finding that three to four months was too distant and noting that the temporal proximity between the protected activity and termination must be "very close"); *Govan v. Sec. Nat. Fin. Corp.*, 502 Fed.

2

Appx. 671, 674 (9th Cir. 2012) (seven months "too distant"); *Swan v. Bank of Am.*, 360 Fed. Appx. 903, 906 (9th Cir. 2009) (rejecting four months); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1068 (9th Cir. 2002) (ten months insufficient).

After disposing of Black's meager timing argument, we're left with Black's lone remaining allegation that a PUD supervisor was told about Black's fraud years before he was fired.[1] But we've squarely rejected this kind of evidence before. In *Curley v. City of North Las Vegas*, we held that when an investigation uncovered significant evidence of an employee's fraud, the mere fact that the company had some prior knowledge of the misconduct wasn't enough to beat summary judgment.[2] 772 F.3d 629, 633–34 (9th Cir. 2014). So too here. At most, even drawing all inferences in Black's favor, this evidence suggests that one supervisor at PUD was told that Black fudged his timesheets and asked others to do so; not that PUD *knew*, based on a thorough investigation, that he ring-led a scheme involving substantial

---

[1] It's telling that despite having access to the full range of civil discovery tools, Black hasn't managed to uncover any other competent evidence of pretext.

[2] The majority's suggestion that *Curley* only applies when post-lawsuit misconduct triggers an investigation is unconvincing and misreads the case. In this case and *Curley*, the employee was fired for serious misconduct which pre-dated the protected lawsuit. 772 F.3d at 633. Here, as in *Curley*, the employer was not aware of the "severity and scope" of the employee's misconduct pre-lawsuit. *Id.* But in both *Curley* and here, the employer's investigation into the employee's prior misconduct was triggered by events that transpired after the employee filed their lawsuit. *Id.* at 633-34. And most importantly, in both cases, the employer's termination decision was predicated on new evidence, acquired through a post-lawsuit investigation, revealing the "full extent of [the employee's earlier] misconduct." *Id.* at 634. Thus, *Curley* is directly on point.

fraud by multiple employees. In light of the considerable evidence that Black's fraud justified his termination, Black's allegation simply isn't enough to raise a genuine issue of fact as to pretext under our precedent.

The majority, seemingly for the first time, reverses a district court based on the concept of multiple "but-for" causes in the retaliation context. Furthermore, it does so without any explanation of how the district court or the parties are supposed to apply this difficult concept to the case at hand. Despite the majority's suggestion, *Bostock v. Clayton County*, 140 S. Ct. 1731, 1739 (2020), did not alter the Court's clear guidance on retaliation claims: the employee must prove that "the unlawful retaliation would not have occurred *in the absence of* the alleged wrongful action or actions of the employer." *Nassar*, 570 U.S. at 360 (emphasis added).

Finally, I'm concerned that the majority's approach may unduly constrict a company's well-established right to act upon information about employee misbehavior, even if it's discovered after the employee engages in protected activity. *See McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 362 (1995) ("Once an employer learns about employee wrongdoing that would lead to a legitimate discharge, we cannot require the employer to ignore the information, even if it is acquired during the course of discovery in a suit against the employer and even if the information might have gone undiscovered absent the suit."). In effect, the majority holds that despite the extensive evidence supporting PUD's rationale for

4

firing Black, a single PUD supervisor's previous inkling that Black fabricated timesheets renders Black summary-judgment-proof.

I concur with the majority that Black's discrimination claim fails. But I would also hold that Black's evidence didn't meet the threshold for showing his lawsuit was the but-for cause of his termination under federal law.[3] There's simply not enough evidence for causation—I would affirm.

I respectfully dissent.

---

[3] Because the less-stringent "substantial factor" test applies to retaliation suits brought under Washington anti-discrimination law, *Jin Zhu v. N. Cent. Educ. Serv. Dist.-ESD 171*, 404 P.3d 504, 507 (Was. 2017), there is a genuine dispute of fact on Black's state law claim for retaliation.